**The STATE of Texas for the Best Interest and Protection of L.H.**

No. 06–05–00143–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 18, 2006.

Decided Jan. 25, 2006.

---

1. TEX. GOV'T CODE ANN. § 22.201(g) (Vernon Supp.2005), § 22.221 (Vernon 2004).

that L.H. had been diagnosed with psychotic disorder, not otherwise specified (NOS). When asked about any overt acts—Dr. Lee interrupted with the following description:

> Prior to her coming to the hospital, she was behaving in a very bizarre, paranoid manner; hiding herself in her home there with her mother; saying people were out trying to get her. She at one point fashioned a—according to her mother—fashioned a knife out of a razor blade and actually cut her mother with that razor blade and, according to her mother, cut herself.
>
> She was very religiously preoccupied and was—I believe the final event that brought her into the hospital initially was she was out in her yard praying with her hands up, and the police in that area came and brought her in. Since she's been in the hospital, she has behaved in a paranoid manner. She's refused any medications or any suggestions that have been made.

Dr. Lee also testified that L.H. has been "very intrusive on the unit, inappropriate with other patients, kissing staff, kissing other patients" on the cheek. He further testified that L.H. admitted to having fashioned another razor into either a weapon or, from L.H.'s explanation, a caulk-removal tool. While in the hospital, presumably on an emergency commitment, L.H. removed the razor blades from a disposable razor. The hospital staff asked her about the razor, and she stated that she had fashioned the blade into a caulk-removal tool and then, after using it to clean the caulk in her hospital shower, "flushed the tool" out of concern for other patients in the hospital.

On cross-examination, Dr. Lee admitted that he did not attempt to confirm L.H.'s

Nancy Kennedy, Law Office of Nancy Kennedy, Plano, for appellant.

Jeffrey E. Dailey, Hunt County Asst. County Atty., Greenville, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

L.H. appeals the trial court's order committing her to Terrell State Hospital inpatient mental health services for a period not to exceed ninety days. She argues the evidence is legally and factually insufficient to support the trial court's order. Having concluded that the evidence is both legally and factually sufficient, we affirm the trial court's order.

## I. FACTUAL BACKGROUND

At the hearing, the State presented the testimony of Dr. Paul Lee, who testified

caulking explanation. He again described her as religiously preoccupied and explained that her preoccupation led her to make decisions contrary to her own best interests. He also testified that L.H. was in denial about her illness. He reiterated his testimony about L.H.'s intrusiveness and "inappropriate boundaries." He stated that he never discussed the cheek-kissing with her and also stated that she never went beyond kissing on the cheek to kissing on the mouth, groping, or lewd suggestions.

Dr. Lee indicated that L.H. described a good relationship with her family until, according to L.H., her mother concocted this story to get her into drug treatment. Dr. Lee testified that he thinks L.H. is a danger to herself. He also conceded that he did not know the exact date on which L.H. allegedly injured her mother and herself. Dr. Lee testified that L.H. had been trying to minister to fellow patients during her hospital stay. He admitted that, despite concerns regarding her safety and the safety of the other patients, L.H. is allowed regular access to pens and pencils. He explains that L.H. is always in the line of the staff's sight.

L.H. testified that the only harm she has done to herself is through past substance abuse, and denied any attempt to otherwise injure herself. She explained that the first weapon she made was out of concern regarding some associations with a drug dealer and her fear of retaliation after having begun to cooperate with law enforcement officials regarding the dealer. She explained that she was putting her prior home improvement experience to work with the razor blade tool at the hospital and that, after she had cleaned up the caulk, she "flushed the tool" because it could pose a danger to fellow patients.

She testified that she tried to help other patients as best she could and that she was a certified nurse's assistant. She explained that several patients came to seek her help with food and drinks "and such." She also described her recent religious conversion. She explained her resistance to medication in terms of religion and her newly-formed stance against putting "anymore [sic] vile things in my body." She testified that she had been clean since October "the 27th at 3:10 p.m." She adamantly denied ever hurting or threatening her mother. She also explained that she was simply praying in her yard when she was taken in to the hospital and that she regularly kisses people on the cheek as an expression of "brotherly love" and because she loves everyone in the world.

■ In its order of commitment, the trial court found that L.H. "is likely to cause serious harm to self." Additionally, the trial court found that L.H. "will, if not treated, continue to suffer severe abnormal mental, emotional or physical distress, is experiencing substantial mental or physical deterioration of [her] ability to function independently ... and is unable to make a rational and informed decision as to whether or not to submit [to] treatment." [1]

---

**1.** At oral argument, L.H. contended that the trial court's order was invalid insofar as it used the term "or" rather than "and." According to her argument, since the trial court found that L.H. would likely cause harm to herself or that she will continue to suffer without treatment, the order was invalid. This contention was not raised in L.H.'s brief.

Arguments and claims of error not raised in the party's brief are considered waived. *See Specialty Retailers, Inc. v. DeMoranville,* 933 S.W.2d 490, 493 (Tex.1996); *Satterfield v. Satterfield,* 448 S.W.2d 456, 460 (Tex.1969); *Flagship Hotel, Ltd. v. City of Galveston,* 117 S.W.3d 552, 563 n. 2 (Tex.App.-Texarkana

## II. APPLICABLE LAW

### A. Statutory Requirements

A court may order a proposed patient to receive temporary inpatient mental health services only if the fact-finder concludes from clear and convincing evidence that the proposed patient is mentally ill and also meets at least one of the additional criteria set forth in Section 574.034(a)(2):

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others; or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034 (Vernon 2003). Here, the trial court's written order affirmatively found the State's allegations under (A) and (C) to be true.

### B. The State's Burden

■ The evidentiary standards for involuntary commitment are high. *Harris v. State,* 615 S.W.2d 330, 333 (Tex.Civ.App.-Fort Worth 1981, writ ref'd n.r.e.). The State has the burden of establishing by clear and convincing evidence that the proposed patient meets at least one of the additional criteria listed in Section 574.034(a)(2). *See Mezick v. State,* 920 S.W.2d 427, 430 (Tex.App.-Houston [1st Dist.] 1996, no writ). Clear and convincing evidence is that "degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979).

■ When court-ordered temporary mental health services are sought under subsection (a), specific requirements for clear and convincing evidence are imposed: the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: "(1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). An expert diagnosis, without more, is not sufficient to confine a patient for compulsory treatment. *Mezick,* 920 S.W.2d at 430. The State cannot meet its burden of proof without presenting evidence of the behavior of the proposed patient that provides the factual basis for the expert opinion. *See id.* The

2003, pet. denied). Since the issue was not raised in her brief to the Court, preventing the State from fairly responding to her contention, we do not consider the contention on appeal and note only that, in accordance with

Section 574.034(c), the order "specif[ies] which criterion listed in Subsection (a)(2) forms the basis for the decision." *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(c) (Vernon 2003).

recent overt act or continuing pattern of behavior shown by the State must also relate to the criterion on which the judgment is based. *See T.G. v. State*, 7 S.W.3d 248, 252 (Tex.App.-Dallas 1999, no pet.).

## C. Standards of Review

■■ To review the legal sufficiency of the evidence where the burden of proof is clear and convincing evidence, we consider all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002). We must assume that the trier of fact resolved disputed facts in favor of its finding if a reasonable trier of fact could do so, and must disregard all evidence that a reasonable trier of fact could have disbelieved or found to be incredible. *Id.*

■ In reviewing factual sufficiency challenges, we review all the evidence in the record, both that in support of and contrary to the trial court's findings. *In re C.H.*, 89 S.W.3d 17, 27–29 (Tex.2002). We must give due consideration to evidence the trier of fact could reasonably have found to be clear and convincing. *Id.* at 25. Under the clear and convincing standard, we determine whether the evidence is such that the trier of fact could reasonably form "a firm belief or conviction" as to the truth of the allegations sought to be established by the State. *Id.* We must consider whether disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266. The trial court as the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *In re Estate of Canales*, 837 S.W.2d 662, 669 (Tex.App.-San Antonio 1992, no writ).

## III. ANALYSIS

L.H. does not challenge the determination that she was mentally ill. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(1). However, she challenges the evidence supporting the findings required pursuant to Section 574.034(a)(2). In a related appeal, she also challenges the order authorizing administration of psychoactive medications on the basis that the trial court's commitment order is not supported by sufficient evidence.

■ We disagree with the State's position that the evidence of L.H.'s kissing of other patients serves as a factual basis for upholding the trial court's order. We conclude that such action, while perhaps not advisable in a facility for those suffering from mental illnesses, does not sufficiently confirm the likelihood of harm to L.H. Likewise, we conclude that L.H.'s refusal to take medication is, alone, insufficient to form the factual basis for the trial court's finding that L.H. posed a danger to herself.

■ In support of her position, L.H. relies on a line of cases holding that the evidence was insufficient to support the trial court's findings. *See In re K.D.C.*, 78 S.W.3d 543, 550–51 (Tex.App.-Amarillo 2002, no pet.); *K.T. v. State*, 68 S.W.3d 887, 893 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *T.G. v. State*, 7 S.W.3d 248, 252 (Tex.App.-Dallas 1999, no pet.); *Johnstone v. State*, 961 S.W.2d 385, 389 (Tex.App.-Houston [1st Dist.] 1997, no writ); *Broussard v. State*, 827 S.W.2d 619, 622 (Tex.App.-Corpus Christi 1992, no writ); *In re J.S.C.*, 812 S.W.2d 92, 95

(Tex.App.-San Antonio 1991, no writ); *see also J.M. v. State,* 178 S.W.3d 185 (Tex. App.-Houston [1st Dist.] 2005, no pet.) (not designated for publication); *For the Best Interest & Prot. of J.J.K. v. State,* Nos. 14–03–00379–CV & 14-03-00380-CV, 2003 WL 22996950, 2003 Tex.App. LEXIS 10730 (Tex.App.-Houston [14th Dist.] Dec. 23, 2003, no pet.) (not designated for publication). We reaffirm the general proposition that evidence of L.H.'s mental illness, which she does not contest on appeal, without more, does not fulfill the statutory requirement for ordering involuntary inpatient mental health services under Section 574.034. *See K.D.C,* 78 S.W.3d at 551; *T.G.,* 7 S.W.3d at 252; *Broussard,* 827 S.W.2d at 622.

However, after carefully reviewing the evidence presented in these cases, we distinguish the instant case from that line of cases in that, here, we do, in fact, have evidence that L.H. cut herself and also took actions that would indicate she contemplated doing so again. Such evidence confirms "the likelihood of serious harm" to L.H. We now focus our attention to the evidence of the two incidents regarding L.H.'s alteration of razors into weapons and determine whether such evidence is "a recent overt act ... that tends to confirm ... the likelihood of serious harm to [L.H.]." *See* Tex. Health & Safety Code Ann. § 574.034(d)(1).

## A. First Incident with Razor

The first razor incident, again, involved the use of a razor as a weapon in response, according to L.H., to the danger posed to her by her former association with a drug dealer and her cooperation with law enforcement officials. The evidence shows that she used this weapon to injure both her mother and herself. Such evidence

would appear to constitute a factual basis for the trial court's finding that L.H. posed a danger to herself. However, Section 574.034(d) explicitly requires that the evidence show a "recent overt act ... that tends to confirm ... the likelihood of serious harm to [L.H.]." Tex. Health & Safety Code Ann. § 574.034(d)(1). L.H. concedes that such an act could confirm the likelihood of harm to herself. Here, the issue concerning this evidence centers on whether the act was a recent one.

Dr. Lee admits that he does not know the exact date the incident occurred. On cross-examination, he stated only that the incident occurred "[b]efore she came to the hospital." It is not clear whether he means "shortly" before or simply at some point before her arrival at the hospital. We examine the remainder of the record for evidence regarding when this first incident occurred.

From L.H., we learn that she made the weapon out of concern for her own safety in the context of her cooperation with law enforcement in a case against a drug dealer. We do not and cannot know from this record whether there is any truth to the statement or whether she was delusional or paranoid. Her testimony is critical, however, in placing this first incident in its proper time frame.

L.H. testified that she had been clean and sober since 3:10 p.m. on October 27, 2005, approximately three weeks before her commitment hearing. She was then asked about the drug dealer who, allegedly, had been following her:

> I hope he's behind bars. Unless my mother's turned in the evidence—but I was told to take matters into my own hands. I dropped onto my knees in my mother's yard, and I got told I was

crazy. That was the whole thing. And my mother is behind this.

By this, the record indicates that she was praying in the yard during the time frame in which she was in fear of the drug dealer. We know from Dr. Lee's testimony that this public praying was "the final event that brought her into the hospital initially." So, the record places the razor incident in the context of her drug recovery, cooperation with authorities, fear of being harmed by the drug dealer, and the praying-in-the-yard incident, all of which immediately preceded L.H.'s hospitalization.

So, while Dr. Lee only states that this first razor incident occurred "[p]rior to her coming to the hospital," the record sufficiently places this incident in the time frame very shortly before she was taken to the hospital, making this incident a "recent overt act ... that tends to confirm ... the likelihood of serious harm to [L.H.]." Considering all of the evidence in the light most favorable to the trial court's finding, we determine that a reasonable trier of fact could have formed a firm belief or conviction that its findings were true.

L.H. adamantly denies that she has ever cut herself (or her mother). Nevertheless, since the trial court is the exclusive judge of the credibility of witnesses and the weight to be given their testimony, we conclude that this disputed evidence would not prevent the trial court from reconciling the dispute in favor of its finding. *See J.F.C.*, 96 S.W.3d at 266. We, therefore, conclude that the evidence was factually sufficient.

## B. Second Incident with Razor

With that in mind, we add that the second incident, in which L.H. fashioned a razor "tool" while she was in the hospital, also constitutes "a recent overt act ... that tends to confirm ... the likelihood of serious harm to [L.H.]." *See* Tex. Health & Safety Code Ann. § 574.034(d)(1). That is, considering she had done harm to herself with a razor in the recent past, the fact that she fashioned another device out of a razor tends to confirm Dr. Lee's concerns that L.H. is likely to harm herself. While the record does not demonstrate that she did any harm to herself with the second razor or that she did anything other than caulk repair before disposing of it on her volition, it need not do so. The trial court was authorized to disbelieve that L.H. made the device to clean the extra caulk out of the shower or, even, that she disposed of it. Moreover, "Texas law does not require relatives or physicians of the mentally ill (or the courts) to stand idly by until serious harm occurs.... The purpose of temporary commitment is to avoid just such harm." *See For the Best Interest & Prot. of J.L.*, Nos. 14–05–00360–CV & 14–05–00361–CV, 2006 WL 56821, at 5, 2006 Tex.App. LEXIS 204, at *14 (Tex. App.-Houston [14th Dist.] Jan. 12, 2006, no pet. h.) (mem.op.) (not designated for publication); *see In re G.H. v. State*, 94 S.W.3d 115, 117 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Considering the evidence of L.H.'s prior self-inflicted injury, the trial court could reasonably conclude that this second razor incident confirmed the likelihood of harm to L.H.

## IV. CONCLUSION

We conclude that the evidence supporting the trial court's finding is both legally and factually sufficient. We overrule L.H.'s point of error and affirm the trial court's order.