**Marlin Deandre HOUSE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14-05-01273-CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 20, 2007.

Rehearing Overruled March 15, 2007.

---

Danny K. Easterling, Houston, for appellants.

Kevin P. Keating, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and SEYMORE.

## MAJORITY OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Marlin Deandre House, appeals an order extending inpatient mental health treatment for a period of one year. In three issues, appellant contends (1) the evidence is legally insufficient to support the order, (2) the evidence is factually insufficient to support the order, and (3) the recommitment order is void because it does not specify which statutory criteria formed the basis for recommitment. Be-

cause we find the evidence legally insufficient to support the order, we reverse and render.

## I. BACKGROUND

On December 6, 1996, appellant killed his mother by stabbing her with a kitchen knife ninety-three times. Appellant was indicted for her murder. In August 1997, a psychologist concluded that appellant was "suffering from a mental illness which included paranoid ideation and auditory hallucinations" and that appellant met the requirements for the insanity defense. After a bench trial on November 3, 1997, the trial court found appellant not guilty by reason of insanity. A month later, he was committed to Vernon State Hospital for inpatient treatment. In January 1999, following a physician's recommendation, appellant was transferred to Rusk State Hospital. Since then, the trial court has annually found that appellant meets the requirements for inpatient recommitment. This is an appeal from the most recent recommitment order signed November 28, 2005.

## II. APPLICABLE STATUTORY PROVISIONS AND STANDARD OF REVIEW

Under former article 46.03 of the Texas Code of Criminal Procedure, applicable to this case, recommitment hearings for persons found not guilty by reason of insanity must be conducted pursuant to the Texas Mental Health Code. *See* Act of May 25, 1983, 68th Leg., R.S., ch. 454, 1983 Tex. Gen. Laws 2640, 2644–46 (repealed 2005) (current version at TEX.CRIM. PROC.CODE ANN. art. 46C.261 (Vernon Supp.2006)). Under section 574.066 of the Mental Health Code, a court may renew an order for inpatient mental health services if it finds the patient meets the criteria for involuntary commitment set forth in sec-

tion 574.035(a) of the Mental Health Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.066(f) (Vernon 2003) (specifying the procedure for the renewal of an order for extended mental health services).

Section 574.035(a) provides that a court may order extended inpatient mental health services if the trier of fact finds, by clear and convincing evidence, that, among other requirements, the proposed patient meets the following criteria:

(1) the proposed patient is mentally ill; and

(2) as a result of that mental illness the proposed patient:

> (A) is likely to cause serious harm to himself;

> (B) is likely to cause serious harm to others; or

> (C) is:

>> (i) suffering severe and abnormal mental, emotional, or physical distress;

>> (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

>> (iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.035(a) (Vernon 2003). The trial court must specify which of the criteria under subsection (a)(2) forms the basis for recommitment. TEX. HEALTH & SAFETY CODE ANN. § 574.035(c) (Vernon 2003).

In order to be clear and convincing under section 574.035(a), the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a

continuing pattern of behavior that tends to confirm (1) the likelihood of serious harm to the proposed patient or others, or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.035(e) (Vernon 2003). The court cannot make its findings solely from certificates of examination for mental illness but shall "hear testimony." TEX. HEALTH & SAFETY CODE ANN. § 574.035(g) (Vernon 2003). Further, the trial court may not enter an order for extended mental health services unless appropriate findings are made and are supported by testimony taken at the hearing. *Id.* This testimony must include competent medical or psychiatric testimony. *Id.*

 When the burden of proof is heightened to a clear-and-convincing standard, the standard of review for legal sufficiency of the evidence is also heightened. *In re F.M.*, 183 S.W.3d 489, 492 (Tex.App.-Houston [14th Dist.] 2005, no pet.). In a legal sufficiency review when the burden of proof is clear-and-convincing evidence, the reviewing court must consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002);

*State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979).

### III. LEGAL SUFFICIENCY OF THE EVIDENCE

In his first issue, .appellant argues that under the clear-and-convincing standard that the evidence is legally insufficient to support the trial court's recommitment order. We agree. Preliminarily, we note that the trial court did not make written findings regarding which criterion of section 574.035(a) it relied on when ordering recommitment. However, the trial court concluded at the recommitment hearing that appellant is mentally ill, and as a result of his mental illness, he is likely to cause harm to himself or others, as outlined under section 574.035(a).[1]

Appellant contends there is no evidence of a recent overt act or a continuing pattern of behavior·tending to confirm the likelihood of serious harm to himself or others as required by section 574.035(e). It is not clear from the trial court's comments whether it found a recent overt act or a continuing pattern of behavior. The trial court stated: "[B]ased on his history he's had ideation of both [harm to himself and others] and acting out in one of those." Nevertheless, even if these comments can be construed as a finding of a recent overt act, a continuing pattern of behavior, or

---

1. Specifically, at the end of the hearing, after first stating that, "I don't think anything is clear.... There's nothing really clear to me ...," and opining the State and community have inadequate facilities to care for the mentally ill, the trial court stated,

 Right now, at this point in time I don't feel that the community or you would be safe in releasing you to a personal care home, which is really the only thing that we have for you other than Rusk.... I'll order you recommitted based on the fact that *I do find you are mentally ill and that you're likely to cause harm to yourself or others.* I'm not sure which, but I think there's a possibility

there in a personal care home that, that would or could happen.

After the State asked the trial court to make a finding regarding appellant's "ability to make rational and informed decisions as to whether he is to continue treatment," the trial court stated,

 [A]side from the fact that the Court finds that he is mentally ill, as a result of the mental illness, he's likely to cause harm to himself or others. I'm not going to distinguish between the two because I think based on his history he's had ideation of both [harm to himself and others] and acting out in one of those.

both, appellant contends there is no evidence to support the findings.

Specifically, appellant asserts the evidence shows only "vague behaviors," on appellant's part, which indicate at most that he is mentally ill, but do not constitute a recent overt act or a continuing pattern of behavior tending to confirm the likelihood of serious harm to himself or others.

 Evidence showing only that an individual is mentally ill and in need of hospitalization does not meet the statutory requirements for confinement. *See In re L.H.*, 183 S.W.3d 905, 911 (Tex.App.-Texarkana 2006, no pet.); *In re K.D.C.*, 78 S.W.3d 543, 551 (Tex.App.-Amarillo 2002, no pet.); *D.J. v. State*, 59 S.W.3d 352, 355 (Tex.App.-Dallas 2001, no pet.); *Johnstone v. State*, 961 S.W.2d 385, 389–90 (Tex.App.-Houston [1st Dist.] 1997, no writ); *Broussard v. State*, 827 S.W.2d 619, 622 (Tex. App.-Corpus Christi 1992, no pet.); *In re J.S.C.*, 812 S.W.2d 92, 95 (Tex.App.-San Antonio 1991, no writ). "[B]are psychiatric expert opinion of a 'potential danger' to others is insufficient to support a commitment." *Broussard*, 827 S.W.2d at 622. Rather, an expert's opinions must be supported by a showing of the factual basis. *Id.; In re J.S.C.*, 812 S.W.2d at 95. The expert's conclusions cannot merely mirror the statutory standards for commitment without a factual basis. *K.T. v. State*, 68 S.W.3d 887, 893 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

 Further, even if a court finds a recent overt act or a continuing pattern of behavior, the recent overt act or continuing pattern of behavior must "tend to confirm" one of the section 574.035(a)(2) requirements. *See In re J.J.K.*, 2003 WL 22996950, at *1, 4 (Tex.App.-Houston [14th

Dist.] Dec. 23, 2003, no pet.) (mem.op.) (finding overt acts where the patient engaged in verbal altercations and knocked a door off its hinges while in a seclusion room but holding that these two overt acts did not tend to confirm the patient would cause serious harm to self or others).

## A. Evidence at the Recommitment Hearing

At the recommitment hearing on November 28, 2005, the State presented testimony from Dr. Robert Altschuler and entered appellant's complete medical records into evidence.[2] Dr. Robert Altschuler is a semi-retired, private psychiatrist. He previously examined appellant for his 2004 recommitment hearing. On October 7, 2005, Dr. Altschuler examined appellant for approximately one-and-a-half hours for the 2005 recommitment hearing at issue.

In a letter to the trial court on October 18, 2005, he opined that appellant "continues to be a danger to himself and others if placed in a less restrictive environment." At trial, Dr. Altschuler testified as to the factors on which he based his conclusion. These factors focused on appellant's lack of insight into his illness, guardedness in answering Dr. Altschuler's questions, and paranoia.

First, Dr. Altschuler testified that appellant had a lack of insight into his illness. He explained he "really hoped" that appellant "had a much better understanding of his psychiatric illness" that resulted in his mother's death. Specifically, Dr. Altschuler testified appellant had no understanding what occurred in 1996 when his mother died. During the interview, when Dr. Altschuler asked appellant what had happened to him, appellant said people have

---

2. Although appellant's medical records were admitted into evidence in their entirety, they were not filed with this Court. We issued an order that the medical records be delivered to this court.

told him that "he may have been responsible for his mother's death." Dr. Altschuler found this statement significant because if appellant could not understand what he did, then he may now feel he has been unjustly hospitalized. Dr. Altschuler opined that appellant knew why he was at Rusk State Hospital only because others had told him during his therapy. Further, Dr. Altschuler explained it was important for paranoid schizophrenics to deal with their underlying aggressive act because, by definition, paranoid schizophrenics believe people are out to get them. However, when asked if appellant's lack of insight into his illness was a continuing pattern of behavior, Dr. Altschuler testified, "I don't think those two words can go together. He continues to have good behavior at Rusk most of the time." When asked if appellant's lack of insight would lead to a likelihood of serious harm to himself or others if placed in an outpatient setting, Dr. Altschuler stated that he thought lack of insight and paranoia were the reasons why appellant was a likely harm to himself or others. When asked if appellant's lack of insight into his illness could lead to a deterioration of his ability to function if placed in an outpatient setting, Dr. Altschuler explained that appellant's failure to deal with some of the issues associated with his illness could possibly cause a deterioration of his mental condition and refusal to take psychotropic medications.

Furthermore, Dr. Altschuler testified appellant had experienced paranoid thoughts in the past year. Dr. Altschuler relied on a January 28, 2005 note in appellant's medical records indicating "paranoid thought content." Due to appellant's lack of understanding of his illness and paranoid thoughts, Dr. Altschuler opined appellant might walk away from an outpatient treatment setting.

On cross examination, Dr. Altschuler testified appellant knew the name of his mental illness, knew that he had suffered hallucinations in the past, defined a hallucination as "hearing voices," and said why he thought he was in the hospital. When asked what specific words appellant used in the interview to indicate he was suffering from paranoia, Dr. Altschuler said there were "no exact words." Instead, Dr. Altschuler concluded appellant was suffering paranoia based his "guardedness" in answering Dr. Altschuler's questions and on the medical record notes indicating paranoia. Dr. Altschuler said appellant was guarded because he "shut-down" when asked about issues related to his mother's death. As for the paranoia, Dr. Altschuler said that the medical notes did not indicate why the nurse wrote appellant was suffering from paranoia. Appellant's counsel also referred to a portion of Dr. Altschuler's report filed with the trial court in which Dr. Altschuler wrote that as reflected in a nursing assessment dated October 7, 2004, appellant had decompensated "under the stress and disappointment of returning to Rusk State Hospital" after his last recommitment and there was a "deterioration of self care, homicidal threats, aggression and decompensation." However, when appellant's counsel showed Dr. Altschuler the nurse assessment report from October 7, 2004, Dr. Altschuler agreed that the portion of the nurse assessment report stating "decompensation, deterioration of self care, homicidal threat, aggression" was actually a "history entry."

**B. Analysis**

Appellant argues that the evidence offered by the State only shows appellant is mentally ill but does not satisfy the clear-and-convincing requirement of a recent overt act or continuing pattern of behavior tending to confirm the likelihood of serious harm to appellant or others. *See* TEX.

HEALTH & SAFETY CODE ANN. § 574.035(e). Specifically, appellant contends that Dr. Altschuler's assertions are based on vague behaviors such as appellant's "guardedness," "lack of insight," and "paranoid ideation," which at best prove he is mentally ill. We agree.

First, we note that section 574.035(e) does not define a "recent overt act or continuing pattern of behavior." We also note Texas courts of appeals finding a "recent overt act or a continuing pattern of behavior" have tended to focus on identifiable, observable, physical acts. For example, in *L.S. v. State*, the Austin Court of Appeals found sufficient evidence of a recent overt act or a continuing pattern of behavior where the patient ritualistically burned the skin on his fingers with cigarettes, drank water excessively, causing him to gain ten pounds within an eight-hour period, and left the hospital without authorization for six days. 867 S.W.2d 838, 842 (Tex.App.-Austin 1993, no writ); *see D.M. v. State*, 181 S.W.3d 903, 904 (Tex.App.-Dallas 2006, no pet.) (finding evidence of a recent overt act or a continuing pattern of behavior where the female patient had made a comment to and pushed a male patient, hid contraband in a locker, and attacked the staff when they confiscated the contraband, requiring three people to subdue her); *In re S.E.W.*, 2002 WL 31599910, at *3 (Tex.App.-Houston [14th Dist.] Nov. 21, 2002, no pet.) (mem.op.) (finding evidence of an overt act where the medical records indicated appellant had been found wandering in a church; told the church workers that her father was trying to kill her; and did not know where she was, her age, whom she lived with, or how she came to be in the church).

In support of his argument that the evidence proved only appellant was mentally ill, he cites cases in which testimony reflecting only that a patient was mentally ill was not sufficient to meet the clear-and-convincing standard under the statute. *See Broussard*, 827 S.W.2d at 621–22 (holding evidence of delusions, incoherency of thoughts, and tendency to ramble about various ideas that had no relationship to the topic being discussed only proved patient was mentally ill); *D.J.*, 59 S.W.3d at 355–57 (finding no overt act or pattern of behavior where doctor testified only that defendant was paranoid schizophrenic, likely to harm himself, suffer severe distress, deteriorating, delusional, not taking medication, not able to make treatment decision, and left halfway house); *Johnstone*, 961 S.W.2d at 389–90 (finding evidence was legally insufficient to show overt act or continuing pattern of behavior where evidence only showed patient suffered from chronic schizophrenia, auditory hallucinations, paranoid thinking, uncooperative, hostile to staff, and refused to take his medication); *In re J.S.C.*, 812 S.W.2d at 95 (finding evidence legally insufficient to support commitment order where evidence only showed patient suffered from chronic schizophrenia, hallucinations, and was catatonic).

In particular, appellant asserts that *Whitaker v. State* is instructive. Nos. 01–03–00576–CV & 01–03–00577–CV, 2003 WL 22413511 (Tex.App.-Houston [1st Dist.] Oct. 23, 2003, no pet.). In *Whitaker*, the defendant was found incompetent to stand trial for the alleged offenses of assault and criminal mischief. *Id.* at *1. At the commitment hearing, in addition to the psychiatrist's diagnosis of the defendant's mental illness, the State offered the psychiatrist's expert opinion that without treatment the defendant would again be in a serious psychotic state and would be a danger to himself and others. *Id.* at *3. The defendant believed he owned large amounts of property, was of royal heritage, and suffered paranoid thoughts that people were trying to take advantage of

him. *Id.* The psychiatrist testified he was concerned that because the defendant did not recognize he had a mental illness, he would stop taking his medicine and deteriorate. *Id.* He also opined that the defendant was a danger to himself and others because due to his delusions, he could easily go on someone's property, say he owns it, and become involved in an argument. *Id.* The jury found the defendant was mentally ill and likely to cause harm to himself and others and if not treated would continue to suffer severe and abnormal mental, emotional, or physical distress and continue to experience substantial mental or physical deterioration of his ability to function independently. *Id.* at \*1–2.

On appeal, the defendant argued that the State failed to produce any evidence of a recent overt act. *Id.* at \*2. The First Court of Appeals noted that the psychiatrist's testimony tracked the language of section 574.035 and merely summarized his report. *Id.* at \*3. Further, the court explained that the behavior the psychiatrist relied on as the factual basis for his opinion "constituted nothing more than evidence of [the defendant's] mental illness and did not amount to evidence tending to confirm that [the defendant] was experiencing substantial mental or physical deterioration." *Id.* As a result, the court held the evidence was legally insufficient because there was no evidence of a recent overt act or continuing pattern of behavior tending to confirm the likelihood of serious harm to the defendant or others or the defendant's distress and deterioration of his ability to function. *Id.*

■ We agree with appellant that this case is similar to *Whitaker*. First, in both cases, the psychiatrist's opinion is based on symptoms of the mental illness. In *Whitaker*, the expert relied on delusions and paranoid thoughts that people were trying to take advantage of him. *Id.* In this case, Dr. Altschuler also relied on symptoms of appellant's mental illness. Dr. Altschuler's opinion that appellant will be a harm to himself or others is based on "lack of insight" into his illness and paranoia. Further, Dr. Altschuler testified appellant said "no exact words" indicating he was paranoid, the January 29, 2005 note did not indicate why the nurse wrote "paranoid ideation" in the note, and appellant never said that he thought people were out to get him. Neither Dr. Altschuler's interview nor the medical records provided an identifiable overt act or continuing pattern of behavior. Instead, Dr. Altschuler relied on appellant's "guardedness" in answering Dr. Altschuler's questions on the specifics of what occurred when his mother died and a nurse's note with no indication why she wrote "paranoid ideation." [3]

Further, here, as in *Whitaker*, the State's psychiatrist, Dr. Altschuler, testified he was "concerned" because if appellant did not adequately recognize his mental disorder, he would most likely stop taking his medications, which would cause serious deterioration, making him a danger to himself or others. In drawing this conclusion, both Dr. Altschuler and the psychologist in *Whitaker* relied upon several inferences to predict that harm would come to the appellant or others. In *Whit-*

---

**3.** We note that Dr. Amina Abdulla, the expert witness for appellant who met with appellant one to two times a week for fifteen minutes from early September 2005 until and including the day of the hearing, testified that it does not make any difference whether a paranoid schizophrenic can recall the details of their violent act because "when the act is occurring, most of the time, they are not aware of it ... because they are in a psychotic state." However, she explained that with medication and meeting with a therapist, they can talk about it. Appellant also told Dr. Abdulla "what happened, but he doesn't know why he did it."

*aker*, because the defendant experienced delusions that he owned land, the psychiatrist inferred his delusions could cause him to trespass on another person's property, causing a possible argument and violence. *Id.* The court considered the delusions but did not find that they were sufficient to constitute an overt act sufficient to satisfy section 574.035. *Id.* In this case, Dr. Altschuler's theory of appellant's possible danger to self or others was as follows: if appellant were granted outpatient status, due to his lack of insight into his illness and possible paranoia, he would stop taking his medication; the caseworkers at the outpatient facility would not notice, which would cause a deterioration of his mental state; the caseworkers would also not notice the deterioration, which would then render appellant a danger to himself or others. We agree with appellant that these inferences, similarly considered in *Whitaker*, are not enough to supplant the lack of evidence of a recent overt act or continuing pattern of behavior that tends to show appellant will cause harm to himself or others.

In response, the State contends that this case is similar to *Campbell v. State*, Nos. 14–99–00620–CV & 14–99–00621–CV, 2000 WL 675142 (Tex.App.-Houston [14th Dist.] May 25, 2000, pet. denied). We disagree. In *Campbell*, the defendant attacked his girlfriend attempting to remove both of her eyes with a knife. *Id.* at *1. He was found not guilty by reason of insanity for aggravated assault and kidnaping. *Id.* On appeal from a recommitment order, he argued the trial court's findings were unsupported by evidence of a recent overt act or continuing pattern of behavior. *Id.* at *6. The State's expert testified that Campbell presented a risk of serious harm to both himself and to others if not immediately restrained. *Id.* at *4. The expert explained that Campbell would be a " 'a severe risk to the general public at large,

particularly females' " and that he had a " 'pattern of hostile dependency upon women' " which remained to be dealt with and if not resolved would place women close to him at risk for harm. *Id.* Furthermore, a written report was admitted into evidence that Campbell should have received long-term psychotherapy when he was transferred to Rusk; however, he never received the treatment. *Id.* Therefore, the expert opined that, because the treating professionals at Rusk Hospital never addressed factors in Campbell's psyche which led to the assault, including his hostility towards women, his " 'affinity for rough sex,' " or how he should confront negative emotions with people he is close to, the factors were still present. *Id.* Furthermore, the expert testified that he was in denial about having any anger or hostility, having an affinity for rough sex, and about accepting responsibility for what he did. *Id.* *4–5. In a narrow holding, this court found a "continued pattern of behavior" where "Campbell continued to exhibit a pattern of denial with regards to his anger and hostility toward women." *Id.* at *6. This court relied on the expert's testimony that "given Campbell's vicious attack on his girlfriend, [his] continued state of denial, and his *complete lack of treatment* while at Rusk State Hospital on the issue of hostility," to conclude he would continue to be dangerous to others. *Id.* (emphasis added).

The State contends this case is factually similar to *Campbell* because appellant's inability to discuss his underlying crime is a continuing pattern of behavior and his denial of his January 29, 2005 delusional state is a recent overt act. We disagree.

First, the basis for Dr. Altschuler's testimony as to appellant's inability to discuss his underlying crime was that appellant was "guarded" in his answers, his answers "lacked emotion," and he did not answer

when asked about what occurred in 1996 when his mother died. We do not believe appellant's refusal to openly discuss what occurred in 1996 during a one-and-half-hour interview with someone he did not know or see regularly amounts to a continuing pattern of behavior. Further, at the hearing when Dr. Altschuler was asked whether appellant's "lack of insight" into his illness was a continuing pattern of behavior, Dr. Altschuler did not agree. Instead, Dr. Altschuler testified, "I don't think those two words can go together. He continues to have good behavior at Rusk most of the time." This was Dr. Altschuler's only testimony as to a continuing pattern of behavior, and he did not testify specifically that appellant's inability to discuss the underlying crime was a continuing pattern of behavior.

Second, there are additional facts that distinguish this case from *Campbell*. In *Campbell*, the appellant continuously denied his hostile feelings toward women that led him to assault his girlfriend, and there was evidence that he had not received any treatment for those hostile feelings. *Id.* at *5. The doctor who treated Campbell at Rusk State Hospital testified that he was experiencing denial. *Id.* In this case, there is no evidence in the record that appellant did not receive the requested treatment for his illness at Rusk State Hospital, as there was in *Campbell*.

In addition, the doctors treating appellant at Rusk State Hospital attached reports to the hospital superintendent's letter recommending that appellant be released to an outpatient setting. These opinions contrast with the opinions of Campbell's treating doctor who testified that his unresolved issues with women could be grounds for recommitment.

We disagree with the State's argument that appellant's "denial of his delusional state" in a January 29, 2005 note in his medical records represents a recent overt act.[4] Dr. Altschuler relies on the entry in the note that states he is not delusional. We cannot identify any entries in the January 29, 2005 medical record note or Dr. Altschuler's testimony which would support the assertion that appellant's denial of delusions constitutes an "overt act." Succinctly, an overt act that renders appellant a danger to himself or others must be more than appellant's statement that he is not delusional.

The State asserts that the cases cited by appellant are distinguishable, with the exception of *Whitaker*, because they are appeals from court orders committing a person to 90 days for temporary inpatient mental health services, and none involved a patient with an underlying criminal case. However, former article 46.03 of the Code of Criminal Procedure clearly provides recommitment hearings are to be conducted

---

**4.** The January 29, 2005 note verbatim:

RN weekly level of observation: routine orientation: name, place, posture: normal eye contact: short communication barriers: mental status behaviors: self-converses speech: clear affect/mood: depressed thought processes: impaired, delusional, paranoid thought content: delusional, paranoid suicidal ideations: denies homicidal ideations: history of homicide insight judgment: poor attention span: brief memory: impaired grooming/ hygiene: clean, self care activities of daily living: self care diet/ appetite: good neurological: alert respira-

tory: even and unlabored, HX, + PPD skin: warm and dry cardiovascular: hyperlipidemia genitourianry: no known problem gastrointestinal: no known problem musculoskeletal: moves all extremeties well: treatments provided: meds. Additional notes: MHMI self converses, cannot hold a conversation. He has been med compliant. Did not want to talk about meds. Pt. states he is not having any problems and is not paranoid. *He states he is not delusional.* Pt. is med compliant. (emphasis added).

pursuant to the provisions of the Mental Health Code. *See* Act of May 25, 1983, 68th Leg., R.S., ch. 454, 1983 Tex. Gen. Laws 2640, 2644–46 (repealed 2005) (current version at TEX.CRIM. PROC.CODE ANN. art. 46C.261 (Vernon Supp.2006)). These Mental Health Code provisions are also applied for the purpose of committing a mentally ill person in a civil context. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034 (Vernon 2003); *In re F.M.*, 183 S.W.3d at 491–92. Therefore, we see no reason why courts may not look to both types of cases for guidance on the application of Mental Health Code Section 574.035.

In our review of appellant's medical records, we observed that between January 29, 2005 and May 22, 2005, there were eight notes by the same nurse as the January 29 note, all with the same or nearly the same language as the January 29 note. However, based on our review of the medical records, Dr. Altschuler's testimony, and Dr. Altschuler's report, we find no evidence of an overt act or continuing pattern of behavior. We acknowledge that appellant is mentally ill. However, evidence showing only that an individual is mentally ill and in need of hospitalization does not meet the statutory requirements for confinement. *See In re L.H.*, 183 S.W.3d at 911; *In re K.D.C.*, 78 S.W.3d at 551; *D.J.*, 59 S.W.3d at 355–57; *John-*

*stone*, 961 S.W.2d at 389–90; *Broussard*, 827 S.W.2d at 622; *In re J.S.C.*, 812 S.W.2d at 95.

We are reluctant to intervene in court-ordered treatment for anyone who is mentally ill. *See In re J.J.K.*, 2003 WL 22996950 at \*5; *Johnstone*, 961 S.W.2d at 389–90; *Broussard*, 827 S.W.2d at 622. We are even more reluctant to intervene relative to court-ordered treatment when the individual committed a violent act due to the mental illness. However, under former article 46.03 of the Code of Criminal Procedure, we must apply civil commitment statutes to recommitment hearings for persons found not guilty by reason of insanity. *See* Act of May 25, 1983, 68th Leg., R.S., ch. 454, 1983 Tex. Gen. Laws 2640, 2644–46 (repealed 2005) (current version at TEX.CRIM. PROC.CODE ANN. art. 46C.261 (Vernon Supp.2006)). Finally, we understand why the trial court said: "There is nothing really clear to me." The evidence presented by the State did not meet the clear-and-convincing standard set forth in the Mental Health Code.[5] *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(e). Because we find no evidence of a recent overt act or a continuing pattern of behavior as contemplated by the statute, the evidence is legally insufficient.[6] We sustain appellant's first issue.

---

**5.** We recognize the Texas Legislature recently decided that annual recommitment hearings will no longer be conducted under the Texas Mental Health Code for persons found not guilty by reason of insanity. The applicable new statute pertains to offenses committed on or after September 1, 2005. Moreover, the legal standard will be whether the party requesting renewal "has established by clear and convincing evidence that continued mandatory supervision and treatment are *appropriate.*" Act of May 27, 2005, 78th Leg. R.S., ch. 831, 2005 Tex. Gen. Laws 2841, 2849 (codified at TEX.CODE CRIM. PROC. ANN. Art. 46C.261)(emphasis added).

**6.** As a result of this holding, appellant may be allowed to enter an outpatient treatment center where he will continue to receive medication and be observed. Under the former article 46.03 Code of Criminal Procedure, applicable in this case, if appellant shows any signs of deterioration, the administrators at the outpatient facility should notify the administering trial court, at which time the trial court may conduct a hearing to decide whether to recommit appellant. *See* Act of May 25, 1983, 68th Leg., R.S., ch. 454, 1983 Tex. Gen. Laws 2640, 2644–46 (repealed 2005) (current version at TEX.CRIM. PROC.CODE ANN. art. 46C.261 (Vernon Supp.2006)).

In light of our holding, we need not consider appellant's remaining issues. Accordingly, we reverse the trial court's order renewing the prior order for inpatient extended mental health services, and we render judgment denying the State's application for renewal of the prior order for extended mental health services.

YATES, J., dissents.

LESLIE BROCK YATES, Justice, dissenting.

Because I believe the evidence is legally sufficient to show recent overt acts or a continuing pattern of behavior that tend to confirm the likelihood that appellant will be a danger to himself or others, I respectfully dissent.

In 1996, appellant murdered his mother by stabbing her more than ninety-three times. He was found not guilty by reason of insanity and committed to Vernon State Hospital. He was subsequently transferred to Rusk State Hospital, where he has remained since 1999. Within two weeks of his arrival at Rusk, the staff physicians recommended that appellant be placed in an outpatient treatment facility. The trial court, however, issued an order re-committing appellant to Rusk for the statutorily mandated period of one year. Since that time, Rusk physicians have annually maintained that appellant should be released, but the court has consistently found appellant continues to meet the criteria for inpatient commitment.

In reviewing the legal sufficiency of the evidence to support a mental health re-commitment, we must review the evidence favorable to the court's judgment to see if there is more than a scintilla to support the judgment. *See K.T. v. State,* 68 S.W.3d 887, 889–90 (Tex.App.-Houston [1st Dist.] 2002, no pet.). We consider only the

evidence and inferences tending to support the fact finding, and disregard all contrary evidence and inferences. *Id.* If there is more than a scintilla of evidence to support the finding, then the legal sufficiency challenge fails. *In re K.C.M.,* 4 S.W.3d 392, 395 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

Dr. Milton Altschuler examined appellant and filed a report in which he concluded appellant continued to be a danger to himself or others if released into a less restrictive environment. Dr. Altschuler noted that the stress and disappointment of returning to Rusk on October 7, 2004 caused appellant to decompensate.[1] Dr. Altschuler reviewed appellant's medical records and noted that there were indications that appellant's paranoid ideation continued throughout the year. The nursing assessment dated October 7, 2004 noted that appellant had suffered deterioration in self-care, homicidal threats, aggression, and decompensation. Appellant contends the nurse's notes from October 7, 2004 appear to be a "history entry," which appellant defines as an entry that "can be referring to something that happened at or even before his hospitalization." At trial, Dr. Altschuler agreed that the notes "look[ed] like a history entry." However, the record is unclear whether the nurse was recording past behavior or current symptoms. The notation in the nurse's assessment is titled: "Presenting Problems/Behavior." The court could have inferred from the notes and Dr. Altschuler's testimony that appellant exhibited those symptoms on the day he was re-admitted to the hospital.

Even if the court determined the nurse's assessment reflected past behavior, appellant's lack of insight into his illness and the continued state of denial that his illness

---

**1.** Dr. Altschuler defined "decompensation" as a regression into severe symptomology.

caused him to commit a crime shows a continuing pattern of behavior, which tends to confirm the trial court's finding. Most concerning to Dr. Altschuler was appellant's lack of insight into his illness and the fact that appellant has not been able to appreciate the consequences of his acute psychotic episode in 1996 that resulted in the murder of his mother. At the hearing before the trial court, Dr. Altschuler testified that appellant's lack of insight could lead to the likelihood of serious harm to himself or others if appellant was placed in an outpatient setting. Because appellant has not taken responsibility for the murder of his mother and does not fully understand his illness, there is a substantial likelihood that appellant would leave an outpatient facility and stop his medication. Both Dr. Altschuler, and Dr. Abdulla, the Harris County physician, testified that appellant could only function as an outpatient if he continued to take his medication.

In *Campbell v. State*, No. 14–99–00620–CV, 2000 WL 675142 (Tex.App.-Houston [14th Dist.] May 25, 2000, pet. denied) (not designated for publication), this court determined that evidence of Campbell's vicious crime, his continued state of denial, and the complete lack of treatment were factors sufficient to demonstrate a continued pattern of behavior under section 574.035(e) of the Texas Health and Safety Code. Similarly, in this case, appellant committed a vicious crime and demonstrated a continued pattern of denial that his illness caused him to commit that crime. The majority opinion attempts to distinguish *Campbell* on the grounds that Campbell did not receive treatment for his illness and the physicians at Rusk agreed that Campbell was in a state of denial. I disagree. The record reflects in this case that appellant received treatment for his illness in the form of medication. The treatment factor, however, does not bear directly on appellant's continued pattern of behavior. With regard to appellant's lack of insight into his illness, although the Rusk physicians recommended release, Dr. Srinivasan noted in appellant's October 7, 2004 medical records that, "Patient readily admits guilt but denies responsibility." Further, in a psychiatric evaluation on the same date, Dr. Srinivasan noted that one of appellant's weaknesses was that he lacked insight.

Although appellant can articulate that he has paranoid schizophrenia and needs to take medicine, he does not take responsibility for his mother's death. A notation in appellant's medical records on January 29, 2005 reflected that he continued to have delusional and paranoid thoughts. Dr. Altschuler testified that appellant "also had suicidal ideation, that he had been making plans, but did not want to talk about medications. He also denied to the individual who had written the progress note that he was not paranoid, did not recognize that he was delusional." I find this evidence legally sufficient to support the trial court's finding of a continued pattern of behavior or an overt act.

In holding the evidence legally insufficient, the majority relies on *Whitaker v. State*, No. 01–03–00576–CV, 2003 WL 22413511 (Tex.App.-Houston [1st Dist.] Oct. 23, 2003, no pet.) (mem.op.). In *Whitaker*, the appellant was found incompetent to stand trial for the alleged offenses of assault and criminal mischief. *Id.* at *1. The psychiatrist in that case testified that he was concerned because Whitaker did not recognize he had a mental illness and that he would stop taking his medicine, causing him to deteriorate. *Id.* at *3. He also opined that Whitaker was a danger to himself and others because due to his delusions, he could easily go on someone's property, say he owns it, and become involved in an argument. *Id.* The court of appeals found that the evidence only sup-

ported the conclusion that Whitaker was mentally ill but was legally insufficient to show a recent overt act or continuing pattern of behavior tending to confirm the likelihood of serious harm to Whitaker or others. *Id.*

This case is distinguishable from *Whitaker.* In this case, appellant murdered his mother by stabbing her more than ninety-three times, but he refuses to take responsibility for her murder. In the year preceding the re-commitment hearing, appellant suffered decompensation and suicidal ideation. Evidence at the hearing reflected that because appellant was in a continued state of denial that his illness caused him to murder his mother, he would be unlikely to take medication in an outpatient facility.

The evidence presented at the hearing goes beyond mere evidence of appellant's denial of his mental illness. Appellant exhibited a continuing pattern of denial that his illness caused him to commit a brutal crime in addition to exhibiting decompensation and suicidal ideation. "Texas law does not require relatives or physicians of the mentally ill (or the courts) to stand idly by until serious harm occurs." *G.H. v. State,* 94 S.W.3d 115, 117 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Because I believe this evidence is legally sufficient to show recent overt acts and/or a continuing pattern of behavior that tended to confirm the trial court's finding that appellant was a danger to himself or others, I respectfully dissent.