96 S.W.3d 651 (2003)
The STATE of Texas for the Best Interest and Protection of L.C.F.
No. 08-02-00360-CV.
Court of Appeals of Texas, El Paso.
January 9, 2003.
*653 Rene Ordonez, Delgado, Acosta, Braden & Jones, P.C., El Paso, for appellant.
Donna J. Snyder, Assistant County Attorney, El Paso, for appellee.
Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

OPINION
SUSAN LARSEN, Justice.
Appellant L.C.F. appeals from a judgment ordering his commitment for temporary in-patient mental health services. We affirm.

Facts
On the evening of August 5, 2002, Officer Gabriel Aguirre of the El Paso Police Department was dispatched to the 10,000 block of Tapier in El Paso, Texas. There he learned that earlier in the evening, the twenty-year-old appellant L.C.F. had entered a neighbor's house without permission, stating that rap singer Eminem was after him and was going to kill him. After being escorted from the house, appellant then ran down the street, collapsed, and then crawled underneath a parked car. The neighbor stated that he did not see anyone chasing appellant. Eventually, appellant crawled from under the car, ran back to his house, and entered his residence.
After Officer Aguirre interviewed appellant's neighbor, he went to check on appellant. When the officer knocked on the door, appellant answered and was "extremely out of breath, breathing heavily, sweating profusely." The officer understood appellant to first be telling him that everything was fine, but later in their conversation, appellant told Officer Aguirre that somebody was after him and was going to kill him. Appellant could not provide any details. The officer then left the house, spoke again with the neighbor, and notified his supervisor. Officer Aguirre returned to appellant, who at that point was "a little bit more verbal, completing more sentences." In the house, Officer Aguirre checked the kitchen area for weapons or signs of drugs or pills. In the kitchen, he noticed plates with spoiled food that seemed to him an unhealthy environment. Officer Aguirre also testified that appellant was "very, very thirsty, very, very thirsty."[1]
After his supervisor arrived, Officer Aguirre explained the situation to him. Appellant could not give them a name to contact. Appellant's mother was out-of-town for the weekend. At that point, the officer and the supervisor determined that appellant needed to be "detained for his own safety as well as the safety of others, specifically for his care and well-being."
*654 Appellant's mother testified that when she arrived at the El Paso Psychiatric Center to visit appellant, he told her that Eminem had come to the house, that Eminem wanted to kill him, and that Eminem had been shooting in the house, that he escaped and went to the neighbor for help. She also testified that appellant had used marijuana in the past. His mother attributed his behavior to the use of illegal drugs. Appellant has no history of psychiatric treatment.
On the evening of August 5, 2002, Dr. Gaafar Ahmed applied for temporary court-ordered mental health services of appellant. That request was granted. On August 7, applications for court-ordered mental health services and emergency detention were filed by Dr. Ahmed and Officer Aguirre. Certificates of medical examination suggesting the commitment were filed by two doctors, Dr. Ahmed, M.D., and Dr. Nicolas Baida Frojoso, M.D. Both doctors diagnosed appellant with psychotic and delusional disorders. A recommendation for court-ordered mental health services not to exceed ninety days was also filed by Christina Calderon, LPC, of the El Paso Community Mental Health & Mental Retardation Center.
At the hearing on the mental health application, in addition to Officer Aguirre and appellant's mother, Dr. Syed Qasim, M.D. testified as an expert witness. Dr. Qasim is a resident in his second month of a four-year program in clinical psychiatry at Texas Tech University. After being taken on voir dire, counsel for the appellant challenged Dr. Qasim as an expert in the case "because of his lack of training, his lack of board certification under Daubert he does not fulfill all the necessary elements to be qualified as an expert in the field of psychiatry." After the State established that Dr. Qasim had passed the licensing exams to practice medicine in the U.S. and that he had been certified as an expert in the courts of Pakistan over 100 times to testify on psychiatric issues, the court allowed Dr. Qasim to testify as an expert.

Mootness doctrine does not apply
Appellant has been released from the commitment at issue and is now receiving treatment on an out-patient basis. Nevertheless, this Court maintains jurisdiction to hear this appeal. An appeal of an order for involuntary mental health services is not moot even if the patient has been released before the appeal is heard. State v. Lodge, 608 S.W.2d 910 (Tex.1980); Holliman v. State, 762 S.W.2d 656, 657 (Tex.App.-Texarkana 1988, no writ). We therefore turn to the merits of L.C.F.'s appeal.

Qualification of Dr. Qasim as an expert
Appellant's first issue contends that the trial court erred in accepting Dr. Syed Qasim as an expert in the field of psychiatry. His first subpoint is that the State failed to present a witness properly qualified to provide expert testimony in the field of psychiatry.
We review the trial court's acceptance of a witness's qualifications as an expert for abuse of discretion. Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718-19 (Tex.1998). The test for an abuse of discretion is not whether, in our view, the facts present an appropriate case for the trial court's action. Instead, the court of appeals determines whether the court acted without reference to any guiding rules and principles. Coots v. Leonard, 959 S.W.2d 299, 301 (Tex.App.-El Paso 1997, no pet.) (citing Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939)). In other words, the court of appeals looks to whether *655 the trial court's act was arbitrary or unreasonable. Id. (citing Smithson v. Cessna Aircraft Co., 665 S.W.2d 439, 443 (Tex.1984); Landry v. Travelers Insurance Co., 458 S.W.2d 649, 651 (Tex.1970)).
Rule 702 of the Texas Rules of Evidence permits a witness qualified as an expert by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding the evidence or determining a fact issue. Tex.R. Evid. 702. Whether a witness is properly qualified as an expert is a preliminary question to be decided by the trial court. Gammill, 972 S.W.2d at 718. The party offering the witness bears the burden of proving that the witness possesses "special knowledge as to the very matter on which he proposes to give an opinion." Id. (citing Broders v. Heise, 924 S.W.2d 148, 151, 152-153 (Tex. 1996)).
Under Gammill a trial court must ensure that "those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." Gammill, 972 S.W.2d at 719 (quoting Broders, 924 S.W.2d at 152). Appellant argues that a physician who is a student in the field of psychiatry cannot be qualified as an expert in such a field absent a significant demonstration of skill, experience, and training. Referring to Broders, appellant reminds this Court that merely possessing a medical degree is not necessarily sufficient to qualify any doctor to outside his or her area of expertise. We certainly agree with that rule; however, we find Broders distinguishable. There, the trial court excluded expert causation testimony from Dr. Frederick Joseph Condo when his testimony appeared to go beyond his expertise. The Texas Supreme Court upheld the trial court's exclusion, but stated "[o]ur holding does not mean that only a neurosurgeon can testify about the cause in fact of death from an injury to the brain, or even that an emergency room physician could never so testify. What is required is that the offering party establish that the expert has `knowledge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." Broders, 924 S.W.2d at 153. We do not read Broders to require exclusion here.
It is true that Dr. Qasim is a resident in his second month of a four-year program in clinical psychiatry at Texas Tech University. Whereas it may be the case that not all residents, whether in their second month or in their fourth year of the program, have the proper knowledge and credentials to testify as experts on all medical topics, this Court cannot say that the trial court abused its discretion when Dr. Qasim was accepted as an expert. Qasim was the treating physician, who was called to give his opinion on his diagnosis of appellant and to recommend a course of treatment. The trial court could have found that in addition to receiving a medical degree from the Sind Medical College in Karachi Pakistan and passing the requisite exams to become licensed to practice medicine in Texas, Dr. Qasim's experience was adequate to make his opinion reliable. Dr. Qasim had undergone a one-year rotation in psychiatry, family practice, and internal medicine in Pakistan. While in his rotation, he estimated that he had examined more than 300 patients which were diagnosed with schizophrenia. He worked as a family practice physician in that same hospital for five years. As many as 40 percent of his patients had a dual diagnosis with medical and psychiatric illnesses. He has worked on a research program on psychotropic drugs and their effects for six *656 months in Chicago. During that period, he dealt directly with patients in explaining their symptoms and their progress in treatment. Dr. Qasim has not yet been authorized to practice psychiatry as a specialist, however the purpose of his residency program is to let him work under the supervision of a faculty member to gain that certification. Under the residency program supervision, Dr. Qasim himself diagnoses patients. At the time of this hearing, he had testified over fifteen times in the courts of the United States and over 100 times in the courts of Pakistan. This evidence supports the trial court's ruling that Dr. Qasim was qualified to diagnose appellant, recommend treatment, and render expert opinions on those topics. Appellant's first subpoint of error is overruled.

Reliability of Dr. Qasim's testimony
In his second subpoint to Issue One, appellant urges that the trial court erred in considering the opinion of Dr. Syed Qasim as a basis for its judgment for in-patient mental health services, claiming there is no showing that the methods used in Dr. Qasim's evaluation were reliable. He notes that Dr. Qasim was not the admitting physician, nor is there any evidence that he spoke with the admitting physician. Appellant also mentions that Dr. Qasim met with appellant only six times over the course of seven days, but fails to explain how this would make his determination any less reliable. The record also contains no evidence that Qasim's opinions were subject to peer review.
Nothing here indicates that any diagnostic technique used by Dr. Qasim is novel or at all outside the usual methods of diagnosis. E.I. duPont de Nemours and Company, Inc. v. Robinson, 923 S.W.2d 549, 557 (Tex. 1995). Nor do the cases appellant relies upon support his claim of unreliability. Broussard v. State, 827 S.W.2d 619, 620-21 (Tex.App.-Corpus Christi 1992, no writ) (useful to present supervising psychiatrist's testimony, in addition to treating intern's, but nothing in case indicates it is required); America West Airlines, Inc. v. Tope, 935 S.W.2d 908, 917-19 (Tex.App.-El Paso 1996, no writ) (not abuse of discretion for trial court to exclude psychologist's testimony).
Appellant also points to his mother's testimony as contradicting that of Dr. Qasim. That the mother's testimony attributes the unusual actions of appellant to drug use rather than mental illness is not dispositive proof of the cause of appellant's distress. First, a trained physician often has an objectivity that family and friends cannot have. Secondly, a trained physician is trained in examination, diagnosis, and treatment. As discussed above, the trial court determined that Dr. Qasim was qualified in this respect. Third, Dr. Qasim's examination of appellant ruled out drug use as a cause for appellant's activity. Thus, the trial court did not abuse its discretion in finding that Dr. Qasim's testimony was reliable under Robinson. Appellant's second subpoint under Issue One is overruled.

The sufficiency of the evidence
Appellant's second issue claims that the State failed to meet its evidentiary burden to present clear and convincing evidence in support of its petition for a judgment for in-patient mental health services.
Because the case involves an elevated standard of proof in the trial court, the court of appeals must apply a higher standard of factual sufficiency in its review of the judgment of the trial court. In the Interest of G.B.R., 953 S.W.2d 391, 396 (Tex.App.-El Paso 1997, no writ). After considering all the evidence, we must determine not whether the trier of fact could *657 reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the existence of the fact is highly probable. Id. Under this standard, the court considers whether the evidence was sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Id. (citing Mezick v. State, 920 S.W.2d 427, 430 (Tex.App.-Houston [1st Dist.] 1996, no writ)).
The judge may order a proposed patient to receive court-ordered temporary in-patient mental health services only if the judge or jury finds, from clear and convincing evidence, that (1) the proposed patient is mentally ill; and (2) as a result of that mental illness the proposed patient is (A) likely to cause serious harm to himself, or (B) others, or (C)(i) is suffering severe and abnormal mental, emotional, or physical distress; (ii) is experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and (iii) is unable to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health & Safety Code Ann. § 574.034(a) (Vernon Supp.2003). Each element of this analysis must be proven by the State by clear and convincing evidence. Id.; G.B.R., 953 S.W.2d at 395-96. An opinion of a "potential danger" to others is not sufficient to support a commitment under this standard. Broussard, 827 S.W.2d at 622 (citing State for Interest of P.W., 801 S.W.2d 1, 3 (Tex. App.-Fort Worth 1990, writ denied); Moss v. State, 539 S.W.2d 936, 951 (Tex.Civ. App.-Dallas 1976, no writ)).
Appellant contends that a number of statements made by Qasim were conclusory. For example, Qasim testified that appellant was delusional, disoriented, and paranoid. Appellant urges that no clinical methodology was offered to substantiate the claims. However, Dr. Qasim did present his observations of appellant over seven days of treatment. Appellant also reminds this Court that the doctor's assessment of the distress suffered by the appellant was moderate. What the doctor actually testified to was that the distress was "at this moment moderate." At the moment the doctor made that claim, appellant was in the hospital and under medication. Dr. Qasim met with appellant six times within seven days. He observed appellant and did blood work to rule out the possibility of hallucinogens or other controlled substances as the cause of appellant's condition. Although the doctor did not investigate appellant's claim that Eminem was actually persecuting him, the tests and observations support Dr. Qasim's diagnosis of psychotic disorder. This satisfies the first prong of the analysis that a court must undergo in a hearing on involuntary commitment of a subject, a finding of mental illness.
With regard to the second prong of the analysis, appellant ignores its disjunctive language. The second prong of the test can be satisfied by clear and convincing evidence on any of the enumerated factors. The trial court found all three of these branches satisfied; thus, if the evidence is sufficient to sustain any one, we will find no error. Dr. Qasim testified that based upon his examination of appellant's behavior that appellant was a danger to himself and others, and that appellant lacked the appropriate faculties to properly care for his basic needs. Further, Officer Aguirre's testimony supports these conclusions. He was called to a scene in which *658 appellant entered a home without permission, then crawled under a car parked in the street. When he was in appellant's home, he noticed that there was rotting food in the kitchen. The officer was therefore sufficiently concerned about appellant's safety to initiate involuntary detention. In light of all this, we conclude that the evidence was sufficient to produce in the mind of the trial judge, the trier of fact in this case, a firm belief or conviction that appellant was a danger to himself and incapable of properly caring for himself, meeting the strict requirements of section 574.034(a). The second issue is overruled.

Conclusion
The judgment of the trial court is affirmed.
NOTES
[1] A similar condition was observed by Dr. Qasim at the hospital. Dr. Qasim testified, "One of the most important behaviors which I noted last night, Sunday night, was that he was drinking water uncontrollably. I had to order a water restriction on him because that could lead to lots of medical complications."