

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00099-CV
_____


THE STATE OF TEXAS FOR THE BEST INTEREST
AND PROTECTION OF L.T.


On Appeal from the County Court at Law #2
Hunt County, Texas
Trial Court No. M-10428


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

L.T. appeals from a court order requiring her to undergo temporary mental health treatment at Glenn Oaks Hospital. On appeal, L.T. argues that the evidence was legally and factually insufficient to support the judgment for mental health services.[1] Because the evidence was legally and factually sufficient for the court to find that L.T. was likely to cause serious harm to others, we affirm the trial court's judgment.

Kristin Naylor filed an application for temporary court-ordered mental health services for L.T. after she attacked her mother and was taken to Glenn Oaks Hospital. Dr. Raza Sayed, a board-certified psychiatrist, testified that L.T. was originally diagnosed with "[p]sychosis disorder not otherwise specified." Sayed explained, "[p]sychosis is impaired touch with reality where people start having hallucinations and paranoid thoughts and believe other people are talking bad about them behind their back, and they have potential to get aggressive when these hallucinations get worse." After discovering from her family "that the psychosis has been continuing for [a] longer period of time," and personally observing L.T. daily, Sayed reformed the diagnosis to a "schizophrenia paranoid-type" behavior disorder.

Sayed stated that L.T. "was brought into the hospital because she became physically aggressive with her family. She attacked her mother," "pushed her into the wall," "threw a shoe at her," and "threw items at home." L.T. "required emergency medications on few occasions for increasing aggression and agitation towards other patients and staff." Sayed testified, "She has come up several times to the nurses' station with aggressive body posturing while we were

---

[1]In a related appeal in our cause number 06-12-00103-CV, L.T. also challenges the order authorizing administration of psychoactive medications on the ground that the trial court's order is not supported by sufficient evidence.

2

talking" and "would approach the nurses with . . . her fists balled up and, essentially, stating that they better watch their back because she knew -- she presumed that people were talking bad about her." L.T. had also approached other patients with "aggressive body posturing as if she was going to physically attack them" and had to be "physically separate[d]" from them. Sayed clarified that, while L.T. had not physically assaulted any patient, she was required to be calmed down through verbal communication. L.T. testified that she would not hurt anyone.

Sayed was especially concerned because, although L.T.'s diagnosis was "within the legal definition of mental illness," L.T. "stated clearly that she does not believe she's mentally ill," and regularly refused the medications required to treat her illness. Even though L.T. was on "a mood stabilizing medication," "an antipsychotic medication and antianxiety medicine," L.T. had "been cherry-picking" her medication. She testified that she would take the medication for "the nerves, but the other I will not take because I do not need." She told the court, "I don't have a mental problem like they say I do." When asked if she would go to counseling outside of the hospital, L.T. said, "I probably could, but there would be no need to." She admitted that she stopped taking medicine because "it wasn't the right medicine for me so I just quit taking it." L.T. also testified that her family could take care of her if she were released and that she was not suicidal or homicidal.

Sayed said L.T. had "been hearing voices commanding her to do different things, like taking a walk in the middle of the night," and her family reported L.T. would wander away from

home when she stopped taking her medications.[2] Sayed expected deterioration in her mental status, increasing the risk of violence towards others. Since L.T. was refusing medication at the hospital despite her mother's attempts to convince her to take the medication, Sayed believed that L.T. would be unlikely to take her medicines if released. He filed a certificate of medical examination opining that, if untreated, L.T.: was likely to cause injury to herself; would continue to suffer severe and abnormal mental, emotional, or physical distress; would continue to experience disorientation of her ability to function independently; and would be unable to make a rational and informed decision as to whether to submit to treatment. Concurring with Sayed, Dr. Fernando Siles filed a certificate of medical examination reaching the same conclusion. Sayed believed that L.T. was a danger to others and that court-ordered inpatient treatment and administration of psychoactive medications was the least restrictive means required to take care of L.T.

In reviewing legal sufficiency, we analyze "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Williams v. Nationstar Mortg.*, 349 S.W.3d 90, 92–93 (Tex. App.—Texarkana 2011, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We are to consider all of the evidence in the light most favorable to the verdict, indulging every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The fact-finder is the only judge of witness credibility and weight to give to testimony. *Id.* at 819. We "cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable

---

[2]Sayed was concerned that she might wander into the street and get hit by a car.

4

disagreement," but when the evidence allows only one inference, "the reviewing court may [not] disregard it." *Id*. at 822.

In reviewing factual sufficiency challenges, we review all the evidence in the record, both that in support of and contrary to the trial court's findings. *State ex rel. L.H.*, 183 S.W.3d 905, 910 (Tex. App.—Texarkana 2006, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 27–29 (Tex. 2002)). "Under the clear and convincing standard, we determine whether the evidence is such that the trier of fact could reasonably form 'a firm belief or conviction' as to the truth of the allegations sought to be established by the State." *Id.* We consider whether the disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. *Id.* (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

A court may order a proposed patient to receive temporary inpatient mental health services only if the fact-finder concludes from clear and convincing evidence that the proposed patient is mentally ill and also meets at least one of the additional criteria set forth in Section 574.034(a)(2):

> (2)    as a result of that mental illness the proposed patient:
>     (A)    is likely to cause serious harm to himself;
>     (B)    is likely to cause serious harm to others; or
>     (C)    is:
>         (i)    suffering severe and abnormal mental, emotional, or physical distress;
>         (ii)    experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii)    unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010).

Finding L.T. a danger to others under Section 574.034(a)(2)(B), the trial court ordered her committed to temporary mental health services for a period of time not to exceed ninety days.  L.T. does not challenge the finding that she was mentally ill.  Instead, she argues that "a reasonable factfinder could not have found that the threat of harm to others was substantial and based on actual dangerous behavior manifested by some overt act or threats in the recent past."

In this involuntary commitment proceeding, the State had the burden of establishing that L.T. was likely to cause serious harm to others by clear and convincing evidence, meaning that "degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *L.H.*, 183 S.W.3d at 909.  To be clear and convincing, the evidence must include expert testimony.  TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (West 2010).

Sayed specifically testified that he believed L.T. was a danger to others.  Because an expert diagnosis, without more, is insufficient to confine a patient for compulsory treatment, the State must present evidence of the behavior of the proposed patient that provides the factual basis of the expert opinion.  *State ex rel. E.E.*, 224 S.W.3d 791, 794 (Tex. App.—Texarkana 2007, no pet.) (citing *Mezick v. State*, 920 S.W.2d 427, 430 (Tex. App.—Houston [1st Dist.] 1996, no writ)); *L.H.*, 183 S.W.3d at 909.  Unless waived, the evidence must also include a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious

6

harm to others. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d)(1) (West 2010); *State ex rel. E.R.*, 287 S.W.3d 297, 299 (Tex. App.—Texarkana 2009, no pet.); *E.E.*, 224 S.W.3d at 794. "A threat of harm . . . must be substantial." *See E.R.*, 287 S.W.3d at 303. Evidence that a proposed patient *might* cause serious harm is insufficient. *See id.* at 305; *State ex rel. L.C.F.*, 96 S.W.3d 651, 657 (Tex. App.—El Paso 2003, no pet.). Likewise, evidence of psychosis, hallucinations, or delusions, without more, cannot justify involuntary commitment. *State ex. rel. S.W.*, 356 S.W.3d 576, 579, 583 (Tex. App.—Texarkana 2011, no pet.).

However, overt acts include both physical acts and verbal statements. *State v. K.E.W.*, 315 S.W.3d 16, 21–22 (Tex. 2010).[3] In *K.E.W.*, the Texas Supreme Court wrote:

> Words can express intent just as physical actions can. For example, a person saying he is going to hit someone can reflect intent to do so, just as the physical act of making a fist and drawing back can reflect such intent. . . . [S]tatements made by a proposed patient such as K.E.W. can be relevant both to determining whether he is mentally ill and also to predicting what actions he might or will take in the future as a result of his mental illness.

*Id.* at 22. The court explained that Section 574.034 "does not require that the overt act demonstrate serious harm to others is imminent if the proposed patient is not committed; its language is broad enough to permit commitment even if the person's oral threat does not cause physical harm." *Id.* "Rather, the statute requires evidence of an overt act that 'tends to confirm' the 'likelihood,' or probability of serious harm to others." *Id.* at 23 (quoting TEX. HEALTH &

---

[3]In *K.E.W.*, a proposed patient recently diagnosed with schizophrenia told his treating physician that he "had been assigned to impregnate multiple women." *K.E.W.*, 315 S.W.3d at 18. He would not cooperate with the staff, paced around the building smoking cigarettes, stated that he wanted to impregnate the female staff, and repeatedly asked for a particular female employee. *Id.* The concerned staff called the police, and after refusal to cooperate with them, the patient was transported to the hospital. *Id.* He became agitated and insisted that he needed to leave the hospital to accomplish his mission. *Id.* The court of appeals determined the evidence was insufficient to establish that the patient would likely cause serious harm to others because the harm to others was only "potential." *Id.* at 21. The Texas Supreme Court reversed this finding.

SAFETY CODE ANN. § 574.034(d)). Thus, "a recent overt act by a proposed patient 'tends to confirm' that the patient poses a likelihood of serious harm to others within the meaning of Section 573.034(d) if the overt act is to some degree probative of a finding that serious harm is probable, even though the overt act itself may not be dangerous." *Id.* at 24.

In this case, it was established that L.T. had become "physically aggressive with her family." She had attacked her mother, "pushed her into the wall," and "thr[own] a shoe at her." Although the extent of bodily harm suffered by her mother was unclear, L.T.'s behavior was of sufficient concern that her mother brought her to the hospital. She was also throwing "items at home." Sayed testified that L.T. would approach the nurses with her fists balled up, "stating that they better watch their back because she knew -- she presumed that people were talking bad about her." She also approached other patients with "aggressive body posturing as if she was going to physically attack them" and had to be separated from them. Sayed explained that L.T. had "been hearing voices commanding her to do different things" and that he would "expect deterioration in her mental status, increasing the risk of violence towards others." He warned that she had the "potential to get aggressive" if "these hallucinations get worse" and that the deterioration of her mental condition was likely since she was not taking the required medication.

L.T. admits that she had "some aggressive behavior while in the hospital" but that the behavior "never actually escalated to physical contact or assaultive actions." As explained in *K.E.W.*, it was not required that L.T. assault someone in the hospital in order for the evidence to be sufficient to make a finding under Section 154.034(d). Here, we conclude that L.T.'s balled-

8

up fists, threats to nurses that they better watch their backs, and aggressive body posturing towards nurses and patients was a sufficient demonstration for the trial court to find that she was likely to cause serious harm to others given that she had already become physically aggressive with her family and had attacked her mother. Her balled-up fists and threats to others could have been interpreted by the court as a foreshadowing of what actions L.T. would take in the future as a result of her deteriorating mental illness, which was not being properly treated because L.T. was refusing medication. The above demonstrations were all objectively observable overt acts tending to confirm the likelihood or probability of serious harm to others. We find the evidence legally and factually sufficient to support the trial court's judgment. L.T.'s sufficiency points of error are overruled.

We affirm the trial court's judgment. Due to the nature of this accelerated appeal, we direct that this cause be submitted immediately.


Josh R. Morriss, III
Chief Justice


Date Submitted:     November 19, 2012
Date Decided:      November 20, 2012

9