

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00023-CV

_____

THE STATE OF TEXAS FOR THE BEST INTEREST
AND PROTECTION OF S.K.

On Appeal from the County Court at Law
Cherokee County, Texas
Trial Court No. 40233

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

S.K. was ordered to undergo temporary inpatient mental health treatment at Rusk State Hospital. On appeal[1] from this involuntary commitment, S.K. argues that the evidence was legally and factually insufficient to support the judgment, which was issued on the court's finding that S.K. was likely to cause serious harm to himself. We agree with S.K. and reverse the trial court's judgment.

Pam Mumphrey filed an application for temporary court-ordered mental health services for S.K. after he allegedly threatened suicide. Dr. Stephen Poplar, M.D., filed a physician's certificate of medical examination for mental illness in support of the application after evaluating S.K. Poplar described S.K. as "suicidal" because he "told MHMR [(Mental Health Mental Retardation)] hotline he wanted to bash his head into a wall" and "complain[ed] of multiple stressors contributing to his recent mood states." S.K. confessed that "he was very depressed." In the certificate, Poplar diagnosed S.K. with bipolar and anxiety disorders and determined that S.K. was likely to cause serious harm to himself.

Dr. Robert Bouchat, M.D., also examined S.K. and filed a physician's certificate of medical examination for mental illness. In the certificate, Bouchat likewise determined that S.K. suffered from bipolar disorder. Bouchat wrote that S.K. "admit[ted] to being in [a] recent manic state and feeling that he wanted to bash his head into a wall," "admit[ted] to being . . . manic and needing prompt med[ical] treatment," was "frequently irritated with peers," "t[ook an] inordinate

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

amount of time in responding to simple, direct questions," and was "impatiently demanding to be discharged."

At a hearing on March 5, 2013, the trial court heard the testimony of Bouchat and S.K.[2] Bouchat testified that S.K. suffered from bipolar disorder. Although S.K. did not make a statement about suicide to Bouchat, he "admitted to having had suicidal thoughts before he came here." Bouchat explained, "There was a pattern for symptoms that was apparently prompted primarily by his entering into a homeless state and subsequently becoming suicidal and feeling a resurgence of manic symptoms, which he told me when I spoke with him he felt needed treatment." S.K. had previously "been seen at the Tri-County MHMR for treatment." Bouchat did not recommend outpatient treatment because "[S.K.] may [still be] manic to the point where he's not very well able to deal with delay or frustration of impoliteness on the outside and become demanding and thwart his own best interest." Bouchat added, "It appears that [S.K.] had a significant degree of irritability and impatience and manic symptoms right now that would warrant a little bit more time in the hospital."

During cross-examination, Bouchat admitted that S.K.'s symptoms of irritability and impatience could also be related to his presence in the hospital. He testified, "At this point I believe his suicidal thinking has resolved." Bouchat also stated, "I don't think he had any particular plan worked out or had been on the verge of actually harming himself." He testified that certain members of the Rusk State Hospital staff felt that S.K.'s prior claim of suicide was

---

[2]The trial court took testimony at a prior probable cause hearing, and Hearing Officer Cheryl Martin noted in the record that S.K. "stated [he] was physically emotional and sexual abuse from stepfather & a recent visit home brought back memories of the abuse."

3

made simply for the purpose of receiving treatment. Bouchat also optimistically stated, "I would hope we could give serious consideration to discharging [S.K.] as early as this week."

S.K. testified that he "was told by MHMR that the only way that [he] would be able to receive medication was under the condition that suicidal gestures be made." S.K. stated that he "told them that [he] was frustrated to the point that [he] just felt like bashing [his] head into a wall. It was not in any way intended as a suicidal statement. It was interpreted that way because it was required that suicidal gestures be made in order to be admitted to an inpatient facility." S.K. testified that he was living with his parents who were "waiting impatiently for [him] to get home," had a job lined up at Walmart, and had arranged for outpatient treatment. S.K. assured the court that he would continue to seek treatment, and Bouchat testified that S.K. "c[ould] make that decision rationally" as to whether to submit to treatment. After hearing the testimony, the trial court committed S.K. to temporary inpatient mental health treatment.

S.K. believes this evidence was insufficient to support his involuntary commitment. "[A] State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." *State ex rel S.W.*, 356 S.W.3d 576, 579 (Tex. App.—Texarkana 2011, no pet.) (citing *O'Connor v. Donaldson*, 422 U.S. 563, 576 (1975)). "The requirements for an involuntary commitment are strict because an involuntary commitment is a drastic measure." *Id.*; *see In re Interest and Protection of C.O.*, 65 S.W.3d 175, 182 (Tex. App.—Tyler 2001, no pet.); *In re Breeden*, 4 S.W.3d 782, 789 (Tex. App.—San Antonio 1999, no pet.). "The

evidentiary standards for involuntary commitment are high." *State ex rel. E.E.*, 224 S.W.3d 791, 794 (Tex. App.—Texarkana 2007, no pet.).

In reviewing legal sufficiency, we analyze "'whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.'" *State ex rel. L.T.*, 386 S.W.3d 271, 274 (Tex. App.—Texarkana 2012, no pet.) (quoting *Williams v. Nationstar Mortg.*, 349 S.W.3d 90, 92–93 (Tex. App.—Texarkana 2011, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005))). We are to consider all of the evidence in the light most favorable to the verdict, indulging every reasonable inference that would support it. *Id.* (citing *Wilson*, 168 S.W.3d at 822). The fact-finder is the only judge of witness credibility and weight to give to testimony. *Id.* We "'cannot substitute [our] judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement,'" but when the evidence allows only one inference, "'the reviewing court may [not] disregard it.'" *Id.* (quoting *Wilson*, 168 S.W.3d at 822).

In reviewing factual sufficiency challenges, we review all the evidence in the record, both in support of and contrary to the trial court's findings. *Id.* (citing *State ex rel. L.H.*, 183 S.W.3d 905, 910 (Tex. App.—Texarkana 2006, no pet.); *In re C.H.*, 89 S.W.3d 17, 27–29 (Tex. 2002)). "'Under the clear and convincing standard, we determine whether the evidence is such that the trier of fact could reasonably form 'a firm belief or conviction' as to the truth of the allegations sought to be established by the State.'" *Id.* (quoting *L.H.*, 183 S.W.3d at 910.) We consider whether the disputed evidence is such that a reasonable trier of fact could not have reconciled

5

that disputed evidence in favor of its finding. *Id.*; *see In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

A court may order a proposed patient to receive temporary inpatient mental health services only if the fact-finder concludes from clear and convincing evidence that the proposed patient is mentally ill and also meets at least one of the additional criteria set forth in Section 574.034(a) (2):

> (2)    as a result of that mental illness the proposed patient:
>     (A)    is likely to cause serious harm to himself;
>     (B)    is likely to cause serious harm to others; or
>     (C)    is:
>         (i)    suffering severe and abnormal mental, emotional, or physical distress;
>         (ii)    experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
>         (iii)    unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010).

The trial court's finding was based solely on the belief that S.K. was a danger to himself under Section 574.034(a) (2) (A).[3]

In this involuntary commitment proceeding, the State had the burden of establishing that S.K. was likely to cause serious harm to himself by clear and convincing evidence. *L.H.*, 183 S.W.3d at 909. To be clear and convincing, the evidence must include expert testimony. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (West 2010).

---

[3]S.K. does not challenge the finding that he was mentally ill.

The evidence established that S.K. was irritable, impatient, and depressed as a result of bipolar disorder. Evidence of psychosis, hallucinations, or delusions, without more, cannot justify involuntary commitment. *S.W.*, 356 S.W.3d at 579, 583; *State ex rel. C.B.*, No. 12-11-00089-CV, 2011 WL 3918686, at *3 (Tex. App.—Tyler Sept. 7, 2011, no pet.) (mem. op). While Bouchat specifically testified during direct examination that he believed S.K. was likely to harm himself, an expert diagnosis, without more, is insufficient to confine a patient for compulsory treatment, and the State must present evidence of the behavior of the proposed patient that provides the factual basis for the expert opinion. *S.W.*, 356 S.W.3d at 583 (citing *Mezick v. State*, 920 S.W.2d 427, 430 (Tex. App.—Houston [1st Dist.] 1996, no writ); *see C.B.*, 2011 WL 3918686, at *3; *E.E.*, 224 S.W.3d at 794; *C.O.*, 65 S.W.3d at 181.

Unless waived, the evidence must also include a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to self. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (1); *State ex rel. E.R.*, 287 S.W.3d 297, 299 (Tex. App.—Texarkana 2009, no pet.); *see C.B.*, 2011 WL 3918686, at *3; *E.E.*, 224 S.W.3d at 794. S.K. called the MHMR hotline to report thoughts of suicide. While Bouchat testified that there was a pattern of behavior caused by S.K.'s entry into a "homeless state," he failed to describe a pattern of behavior relating to feelings of suicide as opposed to a pattern of behavior simply indicating mental illness. *See S.W.*, 356 S.W.3d at 580 ("The expert should describe the patient's specific behaviors on which his or her opinion is based."); *see C.B.*, 2011 WL 3918686, at *4.

"A threat of harm . . . must be substantial." *See E.R.*, 287 S.W.3d at 303; *State ex rel. B.M.*, No. 12-04-00365-CV, 2005 WL 3489591, at *5 (Tex. App.—Tyler Dec. 21, 2005, no pet.)

7

(mem. op). Evidence that a proposed patient *might* cause serious harm is insufficient. *See E.R.*, 287 S.W.3d at 305; *State ex rel. L.C.F.*, 96 S.W.3d 651, 657 (Tex. App.—El Paso 2003, no pet.). S.K.'s testimony, which the trial court was admittedly free to reject, established that the call to the MHMR hotline was made in order for S.K. to receive benefits free of charge. However, Bouchat's testimony confirmed S.K.'s statement. Bouchat's testimony established doubt as to whether the suicide report was serious, and Bouchat concluded that "[a]t this point I believe his suicidal thinking has resolved."

We hold, as we did in *S.W.*, that the State did not meet its burden to show a recent overt act or pattern of behavior that would indicate that S.K. was "***likely*** to cause serious harm to himself" by clear and convincing evidence. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (2) (A) (emphasis added).[4] Accordingly, we find the evidence legally insufficient to support the trial court's commitment order. *See S.W.*, 356 S.W.3d at 582.

---

[4]No brief on the State's behalf has been filed despite this Court's April 5, 2013, order scheduling an April 25, 2013, deadline for receipt of the appellee's brief.

8

We reverse the trial court's judgment and order S.K.'s immediate release from involuntary commitment. *See id.* at 584 (citing TEX. HEALTH & SAFETY CODE ANN. § 574.033(b) (West 2010); TEX. R. APP. P. 43.2(c)).


                                        Jack Carter
                                        Justice


Date Submitted:        April 30, 2013
Date Decided:          May 3, 2013