

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00163-CV

IN THE MATTER OF S.S.

----------

FROM THE PROBATE COURT OF DENTON COUNTY
TRIAL COURT NO. MH-2015-216

----------

## MEMORANDUM OPINION[1]

----------

This is an accelerated appeal from an order for temporary court-ordered mental health services. We reverse and render.

## Background Facts

The State filed an application for temporary mental health services for S.S. on April 29, 2015. The trial court held a hearing on the application on May 13, 2015. The trial court found that S.S. was mentally ill and as a result of that mental illness will, if not treated, continue to suffer severe and abnormal mental,

---

[1]*See* Tex. R. App. P. 47.4.

emotional, or physical distress; will continue to experience substantial mental or physical deterioration of his ability to function independently, which was exhibited by his inability to provide for his basic needs, including food, clothing, health, or safety; and is unable to make a rational and informed decision as to whether or not to submit to treatment. The trial court committed S.S. for inpatient care not to exceed ninety days. This appeal followed.

## Discussion

## 1. Certificates of medical examination

In his first issue, S.S. argues that the trial court lacked jurisdiction over this case because the State failed to file the two certificates of medical examination as required by the health and safety code. *See* Tex. Health & Safety Code Ann. § 574.009 (West 2010). Section 574.009 states,

> (a) A hearing on an application for court-ordered mental health services may not be held unless there are on file with the court at least two certificates of medical examination for mental illness completed by different physicians each of whom has examined the proposed patient during the preceding 30 days. . . .
>
> . . . .
>
> (d) If the certificates required under this section are not on file at the time set for the hearing on the application, the judge shall dismiss the application and order the immediate release of the proposed patient if that person is not at liberty.

*Id.*

A certificate of medical examination must include:

(1) the name and address of the examining physician;

(2) the name and address of the person examined;

2

(3) the date and place of the examination;

(4) a brief diagnosis of the examined person's physical and mental condition;

(5) the period, if any, during which the examined person has been under the care of the examining physician;

(6) an accurate description of the mental health treatment, if any, given by or administered under the direction of the examining physician; and

(7) the examining physician's opinion that:

> (A) the examined person is a person with mental illness; and

> (B) as a result of that illness the examined person is likely to cause serious harm to the person or to others or is:

>> (i) suffering severe and abnormal mental, emotional, or physical distress;

>> (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

>> (iii) not able to make a rational and informed decision as to whether to submit to treatment.

*Id.* § 574.011(a) (West 2010).

S.S. argues that one of the two certificates on file at the time of the hearing was incomplete. The certificate from Dr. Diana Isachievici stated that S.S. was experiencing substantial mental or physical deterioration of his ability to function independently and was unable to make a rational informed decision as to whether or not to submit to treatment, but it did not state that S.S. was likely to

3

cause serious harm to himself or to others or that he was suffering severe and abnormal mental, emotional, or physical distress.

This court has previously held that defects in the certificates of medical examination are not jurisdictional, and a trial court does not err by holding the hearing on the application. *In re D.T.M.*, 932 S.W.2d 647, 652 (Tex. App.—Fort Worth 1996, no writ); *see Campbell v. State*, Nos. 14-99-00620-CV, 14-00621-CV, 2000 WL 675142, at *9 (Tex. App.—Houston [14th Dist.] May 25, 2000, pet. denied) (not designated for publication) (following *D.T.M.* and holding that trial court did not err by refusing to dismiss case due to deficiencies in the medical certificates). We therefore overrule S.S.'s first issue.

## 2. Recent overt act or continuing pattern of behavior

In his second issue, S.S. argues that the State failed to prove by clear and convincing evidence a recent overt act or a continuing pattern of behavior that tends to confirm either the likelihood of serious harm to him or others or his distress and the deterioration of his ability to function. *See* Tex. Health & Safety Code Ann. § 574.034(d) (West Supp. 2014).

Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Civ. Prac. & Rem. Code Ann. § 41.001(2) (West 2008); Tex. Fam. Code Ann. § 101.007 (West 2014); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012); *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). This intermediate standard of proof falls

between the preponderance standard of proof applicable to most civil proceedings and the reasonable doubt standard of proof applicable to most criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). While the proof must be of a heavier weight than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Addington*, 588 S.W.2d at 570.

Proof of mental illness, such as evidence of psychosis, hallucinations, or delusions, without more, does not fulfill the statutory requirement for ordering involuntary inpatient mental health services. *State ex rel. L.T.*, 386 S.W.3d 271, 275 (Tex. App.—Texarkana 2012, no pet.); *In re State ex rel. K.D.C.*, 78 S.W.3d 543, 551 (Tex. App.—Amarillo 2002, no pet.). There must also be an overt act or continuing pattern of behavior that tends to confirm the likelihood of either serious harm or deterioration. *See* Tex. Health & Safety Code Ann. § 574.034(d); *K.E.W.*, 315 S.W.3d at 23; *State ex rel. S.W.*, 356 S.W.3d 576, 580 (Tex. App.—Texarkana 2011, no pet.).

The only testimony at the commitment hearing came from Dr. James Shupe. Dr. Shupe testified that S.S. came into contact with the police after they had received phone calls about bizarre behavior. S.S. told the police that he had been fighting other people and disarming them of their weapons. The police did not find any weapons on S.S.

5

Dr. Shupe testified that S.S. remained psychotic, had an "extremely limited" understanding of what was going on, and did not believe that he had an illness or a reason to seek treatment. He believed that S.S. was not likely to cause serious harm to himself or to others. He did say that S.S. was suffering from severe and abnormal distress that, if untreated, would continue and would cause deterioration of his ability to function. Dr. Shupe testified that S.S. was involved in a family violence incident, but that incident occurred on September 28, 2014, over six months before the most recent events. Dr. Shupe mentioned "at least two other incidences since [S.S.] was released from jail approximately 90 days ago," but Dr. Shupe did not explain what those instances were or how they could be construed as a continuing pattern of behavior.

When asked what specifically had led Dr. Shupe to the conclusion that S.S. could not provide for his basic needs, Dr. Shupe said, "Basically, that [S.S.] won't even stay in his own house that's being provided for him. He goes out in the community, believes he's fighting other people, and has to have the police come multiple times over the last six months to pick him up." Dr. Shupe said that S.S. did not appear emaciated, that he appeared appropriately dressed, and that he seemed to be in good health other than his psychosis. Dr. Shupe also read Dr. Isachievici's certificate of medical examination and stated that she had also reported that S.S. was not likely to cause serious harm to himself or others.

Although the evidence clearly indicates that S.S. suffers from a mental illness, it does not demonstrate an overt act or a continuing pattern of behavior

6

sufficient to support his commitment. There is no evidence of what harm would befall S.S. or others by his leaving his house or how it was a sign of his deterioration. *See In re C.O.*, 65 S.W.3d 175, 182 (Tex. App.—Tyler 2001, no pet.) (holding that testimony that did not explain the nature of the anticipated impairment and resulting harm was insufficient to support commitment); *D.J. v. State*, 59 S.W.3d 352, 355 (Tex. App.—Dallas 2001, no pet.) (holding that evidence of poor nutrition, noncompliance with medication, and "wandering" away from home was not sufficient to support finding that patient was likely to harm herself or that she was distressed and deteriorating within the meaning of the statute); *In re J.S.C.*, 812 S.W.2d 92, 96 (Tex. App.—San Antonio 1991, no writ) (holding doctor's statement that patient is "not able to take care of himself outside the hospital" was not specific enough and therefore factually insufficient to support court-ordered treatment). There was no evidence that S.S. was unable to care for his basic needs. There was no testimony describing the other "incidents" in which S.S. was involved so as to indicate to the factfinder that S.S. was deteriorating or likely to cause harm. *See Johnstone v. State*, 961 S.W.2d 385, 389 (Tex. App.—Houston [1st Dist.] 1997, no writ) (holding that testimony of patient's repeated refusal to take medication and his ability to function independently would continue to deteriorate are not specific enough to show an overt act or continuing pattern of behavior); *Broussard v. State*, 827 S.W.2d 619, 622 (Tex. App.—Corpus Christi 1992, no writ) (holding that lack of "specific evidence" of the facts of a disturbance caused by the patient failed to meet

7

burden of establishing an overt act). As stated by our sister court, we are reluctant to deny court-ordered treatment to an obviously ill appellant, but "we cannot lower the requirements imposed under section 574.034(c) of the Texas Mental Health Code regarding proof by clear and convincing evidence." *Broussard*, 827 S.W.2d at 622. We therefore sustain S.S.'s second issue. Because this issue is dispositive of the appeal, we do not need to reach S.S.'s third issue. *See* Tex. R. App. P. 47.1.

## Conclusion

Having overruled S.S.'s first issue and sustained his second issue, we reverse the trial court's order for temporary inpatient mental health services and render judgment denying the State's application for court-ordered temporary mental health services. *See J.M. v. State*, 178 S.W.3d 185, 197–98 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (rendering judgment denying court-ordered temporary mental health services after holding evidence legally and factually insufficient to support trial court's ruling). We further order S.S.'s immediate release from involuntary commitment. *See* Tex. Health & Safety Code Ann. § 574.033 (West 2010); *State ex rel. S.W.*, 356 S.W.3d 576, 584 (Tex. App.—Texarkana 2011, no pet.).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

GARDNER, J. filed a concurring and dissenting opinion.

DELIVERED: July 28, 2015

8