OPINION
Opinion by Justice Burgess
H.S. appeals from the trial court’s order requiring her to undergo temporary mental health treatment at the Hunt Regional Hospital. On appeal, H.S. argues that the evidence was legally insufficient to support the order for mental health services.[1] Because we find the evidence legally sufficient to support the temporary commitment order, we affirm the trial court’s ruling.[2]
I. Evidence Relating to H.S.’s Temporal Commitment
H.S., a seventy-seven-year-old woman, believed that she was a federal agent with the “FBI, CIA_enlisted in Washington DC.” At her commitment hearing, H.S. testified that she became a federal agent because “all of the Molly Sellers,” who she described as “morphodite[s]” with “no sex glands,” “were tailing [her] so tight that [she] could not even make a' phone call.” H.S. claimed that the “Molly Sellers” forced her to come to Texas, were “very very strong,” and needed to be “arrested and put in a cell that cannot be broken.” When' asked if she had ever threatened to harm or kill anyone H.S. testified,
No, I haven’t taken that advantage. I was assigned a gun or — gun, but I never received it. It was supposed to be a firearm with a serial number and my name. I never received it. The FBI of Chicago sent me my ID and I never received that either. It wasn’t until a few weeks later after I moved .... that I found out that Molly was .going through my mail when the mailman came.
H,S. testified that she was estranged from all of her family and that her vehicle had been stolen. She claimed that she had an apartment at a United States military base and would reside there if the trial court so allowed.
The evidence at the commitment hearing established that H.S. threatened to kill nursing staff after accusing them of engaging in a conspiracy against her. This action prompted Michelle McConnell to file an application for temporary court-ordered mental health services for H.S.
Dr. Paul M. Lee, a board certified psychiatrist and neurologist, testified that H.S. suffers from a “chronic[,] paranoid-type” of schizophrenia that causes “very bizzare delusions that grossly impact her behavior” and her ability to make rational decisions.[3] Lee testified that H.S. was admitted to the hospital, “was having a great deal of rectal bleeding .... that was very alarming to our gastroenterologist,” and “was on a blood thinner that had substantially worsened the bleeding.” However, “due to her delusional beliefs,” Lee continued, H.S. was refusing medical care because she believed that the doctors (1) were involved in a Mormon conspiracy to harm her and (2) were not qualified to treat her unless they were federal agents. Lee also testified that H.S. refused to speak with him about her serious medical condition because she believed he was a *549 “morphodite.” Lee stated that H.S. was unable to follow recommendations of health care providers for her “significant medical problems” and was selective about what medications she would take..
After examining H.S., Lee filed a certificate of medical examination opining that, if untreated, H.S.: was likely‘to cause serious harm to herself or others; would continue to suffer severe and abnormal mental, emotional, or physical distress; would continue to experience disorientation of her ability to function independently; and would be unable to make a rational and informed decision as to whether to submit to treatment. Lee testified in support of these conclusions at the Commitment hearing.
Concurring with Lee, Dr. Mahmoud Mohamed also filed a certificate of medical examination reaching ' the same conclusions. Mohamed’s certificate stated that H.S. is “acutely psychotic, ... believes ‘she is federal[ J... does not talk to anyone she does not believe to be federáis” and . is unable to care for herself. According to Mohamed, H.S, stated that “they” and the “Nazis” were trying-to kill her. Mohamed concluded that H.S. was an. acute safety risk to herself and to others as a result of her delusional thought processes.
While Lee agreed that H.S. was oriented to time and place and was capable of feeding and bathing herself, he testified that H.S.’s mental status would deteriorate and that inpatient hospitalization was the least restrictive means of appropriately treating her.[4] . H.S. testified that she did not agree with Lee’s diagnosis because she had never met him. H.S. also added that “[Lee] is not through the federal- government.” .Although H.S, acknowledged that she refused treatment after doctors discovered her rectal bleeding, she claimed that her refusal was justified because of her belief that Coumadin, a blood thinner, was the cause of her bleeding.
At the conclusion of the hearing,- the trial court ordered H.S. to undergo temporary mental health treatment.
II. Standard of Review
“[A] State cannot constitutionally confine[,] without more[,] a nondangerous individual who is capable of surviving safely in freedom by [her]self or with the help of willing and responsible family members or friends.” State ex tel. S.W., 356 S.W.3d 576, 579 (Tex.App.—Texarkana 2011, no pet.) (citing O’Connor v. Donaldson, 422 U.S. 563, 576, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975)). “The requirements for an involuntary commitment are strict because an involuntary commitment is a drastic measure.” Id. “The evidentiary standards for involuntary commitment are high.” State ex rel. E.E., 224 S.W.3d 791, 794 (Tex.App.—Texarkana 2007, no pet.).
A court may order a proposed patient to receive -temporary inpatient mental health services only if the fact-finder concludes from .clear and convincing evidence-that the proposed patient is mentally ill - and also meets at least one of, the additional criteria set forth in Section 574.034(a)(2), as follows:
*550 (2) as a result of that mental illness the proposed patient:
(A) is likely to cause serious harm to himself;
(B) is likely to cause serious harm to others; or
(C) is:
(i) suffering severe and abnormal mental, emotional, or physical distress;
(ii) experiencing substantial mental or physical deterioration of the proposed patient’s ability to function independently, which is exhibited by the proposed patient’s inability, except for reasons of indigence, to provide for the proposed patient’s basic needs, including food, clothing, health, or safety; and
(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.
Tex. Health & Safety Code Ann. § 574.034(a)(2) (West Supp.2015).
Here, the trial court found that H.S. is mentally ill and that, as a result of that mental illness, the following two statutory criteria were satisfied: (1) H.S. was likely to cause serious harm to herself and (2) H.S. was (a) suffering severe distress; (b) experiencing substantial deterioration of her ability to function independently; and (c) unable to make a rational and informed decision about whether to submit to treatment. The trial court ordered H.S. committed to temporary mental health serr vices for a period “not to exceed ninety days.” H.S. does not challenge the finding that she is mentally ill. Instead, she argues that the evidence is not legally sufficient to support the trial court’s Section 574.034(a)(2) findings.
“In reviewing legal sufficiency, we analyze ‘ “whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.” ’ ” State ex rel L.T., 386 S.W.3d 271, 274 (Tex.App.—Texarkana 2012, no pet.) (quoting Williams v. Nationstar Mortg., LLC, 349 S.W.3d 90, 92-93 (Tex.App. —Texarkana 2011, pet. denied)); see City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.2005). “We are to consider all of the evidence in the light most favorable to the verdict, indulging every reasonable inference that would support it.” Id. (citing Wilson, 168 S.W.3d at 822). “The fact-finder is the only judge of witness credibility and weight to give to testimony.” Id. This Court “ ‘cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement,’ but when the evidence allows only one inference, ‘the reviewing court may [not] disregard it.’ ” Id. (quoting Wilson, 168 S.W.3d at 822).
III. Analysis
The State had the burden of establishing the Section 574.034(a)(2) grounds “by clear and convincing evidence, meaning that ‘degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.’” L.T., 386 S.W.3d at 275 (quoting State ex rel L.H., 183 S.W.3d 905, 909 (Tex.App.—Texarkana 2006, no pet.)). “To be clear and convincing, the evidence must include expert testimony.” Id. (citing Tex. Health & Safety Code Ann. § 574. 034(d) (West Supp. 2015)).
Lee specifically testified that he believed H.S. was a danger to herself and that the substantial mental deterioration of her ability to function independently was exhibited by her inability to provide for her health or safety. Lee further opined that H.S. was unable to make a rational and informed decision as to whether to submit to treatment. Because an expert *551 diagnosis, without more, is insufficient to confine a patient for compulsory treatment, the State must present-evidence of the behavior of the proposed patient that provides the factual basis for .the expert opinion. Id. (citing Mezick v. State, 920 S.W.2d 427, 430 (Tex.App.—Houston [1st Dist.] 1996, no writ)); E.E., 224 S.W.3d at 794. “Unless waived, the evidence must also include a recent overt act or a continuing pattern of behavior” that tends to confirm “the proposed patient’s distress and the deterioration of the proposed patient’s ability to function.” L.T., 386 S.W.3d at 275; Tex. Health & Safety Code Ann. § 574.034(d)(2)(C) (West Supp.2015).
“[E]vidence of psychosis, hallucinations or delusions, without more, cannot justify involuntary commitment.” L.T., 386 S.W.3d at 275 (citing State ex rel. S.W., 356 S.W.3d 576, 579, 583 (Tex.App.— Texarkana 2011, no pet.)). However, the Texas Supreme Court has explained that overt acts include both physical acts and verbal statements and has concluded that “a proposed patient’s words are overt acts within the meaning of Section 574.034(d),” which “can be relevant both to determining whether he is mentally ill and also to predicting what actions he might or will take in the future as a result of his mental illness.” State v. K.E.W., 315 S.W.3d 16, 21-22 (Tex.2010).
In this case, we focus our analysis on Section 574.034(a)(2)(C) of the Health & Safety Code; We find that, when viewed in a light most favorable to the judgment, H.S.’s testimony constituted an overt act demonstrating (1) that her mental distress is severe and abnormal, (2) that she has experienced substantial mental deterioration of her ability to provide for her health or safety,- and (3) her inability to make a rational and informed decision as to whether or not to submit to mental health treatment. We' explain each finding in turn.
First, Lee testified in detail about H.S.’s mental illness. H.S. testified in a manner that tended to confirm Lee’s testimony about her mental distress. H.S.’s beliefs that she is a federal agent who is being pursued by “morphodites” and others who wish her harm show the severity and abnormality of her mental distress.
Second, the evidence demonstrated that H.S.’s mental illness caused substantial deterioration of her ability to make rational decisions involving her health care at a critical time. .This is not a case where the patient understood the extent of her medical condition and made a rational decision not to participate in treatment. Lee testified that H.S. refused medical treatment in a life-threatening situation and refused to communicate effectively with doctors because she believed they were involved in a conspiracy to harm her. At one point, H.S. acknowledged the occurrence, but denied that she needed emergency treatment. At another point, H.S. denied that she had ever spoken with Lee. Lee also testified that H.S. refused to follow doctors’ orders and took medications selectively and that her “delusional beliefs were interfering with her ability to receive the care that she would normally have received.”[5] We conclude that- the clear *552 afid convincing evidence, which exhibited H.S.’s inability to provide for her health or safety at a critical time, was such that it could produce in the mind of the trier of fact a firm belief or conviction that H.S. was, as a result of her illness, suffering the deterioration of the ability to function independently.[6]
Third, although the evidence at trial established that H.S. had, a severe mental illness, H.S. .concluded-,.that she did not need mental health treatment. Lee testified, and H.S.’s testimony tended to confirm, that H.S. did not have the ability to make a rational and informed decision as to whether or not to submit to mental health treatment.
In sum, we find the evidence legally sufficient to support the trial court’s judgment, H.S.’s sufficiency points of error are oyerruled,
IV. Conclusion
The trial court’s judgment is affirmed.

. In a related appeal in our cause number 06-15-00105-CV, H.S. also challenges the order authorizing administration of psychoactive medications on the ground that the trial court's order is not supported by legally sufficient evidence.

. H.S. did not raise the factual sufficiency of the evidence as a point of error on appeal.

. At trial, Lee indicated that H.S.. was previously admitted to health care facilities due to her mental condition.

. In support of the order to administer psychoactive medication, further discussed in our cause number 06-15-00105-CV, Lee testified that several different medications could be required to treat H.S., including antipsy-chotics, anxiolytics, antidepressants, and mood stabilizers. Lee explained, "I like to have a full toolbox when I go to work because I never know exactly what tool I will need.” Lee also testified, "The only other alternative available to us at this time would be individual psychotherapy,” As further explained in our opinion entered ⅛ H.S.’s companion case, H.S. does not challenge the trial court’s finding that the administration of psychoactive mediation was in her best interest.

. H.S. cites In re F.M. for the broad proposition that the refusal to take medication cannot be considered an overt act sufficient to meet the clear and convincing standard for involuntary commitment. In re F.M., 183 S.W.3d 489, 497 (Tex.App.—Houston [14th Dist.] 2005, no pet.). In that case, the Houston Court of Appeals explained that the patient's refusal to take psychiatric medicine and undergo radiation for breast cancer were .not sufficient, by themselves, to constitute overt acts tending to show a likelihood that the patient would cause serious harm to herself because (1) a person diagnosed with á mental illness cannot be forced to submit to mental health treatment based on the mere fact that *552 she did not want to be treated, and (2) “the refusal of one radiation treatment is not, without more, indicative of an irrational decision.” Id. at 496-97; but see S.W., 356 S.W.3d at 583 ("A person is dangerous to himself or herself if he or she caniiot make a rational decision to receive treatment. The threat results from an inability to seek treatment which might improve her condition.”). This case is not like In re F.M. Here, H.S. was not able to properly communicate with or follow doctors’ orders with respect to a life-threatening condition. Unlike in In re F.M., the evidence here established that her refusal to submit to treatment was not a rational decision' and was, instead, a result of her mental illness. See generally G.H. v. State, 94 S.W.3d 115 (Tex.App. — Houston [14th Dist.] 2002, no pet.); In re L.M., No. 14-06-00709-CV, 2007 WL 236384 (Tex.App. — Houston [14th Dist.] Jan. 30, 2007, no pet.) (mem.op.).

. Further, nothing in the record suggests that H.S. has anyone who could assist' her with such decisions. H.S. was in a nursing home prior to her admission to the hospital, was in fear of using the phone to call anyone due to her mental illness, and had no family to look after her.