# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00544-CV

---

### S. D. W., Appellant

### v.

### The State of Texas, Appellee

---

### FROM THE 478TH DISTRICT COURT OF BELL COUNTY
### NO. 24DCR89075, THE HONORABLE WADE NICHOLAS FAULKNER, JUDGE PRESIDING

---

### O P I N I O N

It is undisputed that S.D.W. is a woman who suffers from mental illness[1] and has been declared incompetent to stand trial under the Code of Criminal Procedure. *See* Tex. Code of Criminal Proc. art. 46B.054 ("Uncontested Incompetency"). But to justify an order involuntarily committing her to a state mental-health facility for extended inpatient treatment, such as the order at issue in this appeal, the State must meet a rigorous set of proof requirements beyond those undisputed facts. *See* Tex. Health & Safety Code § 574.035. This Court is tasked with determining whether the State met that burden. We hold that it did not because the evidence is legally insufficient to show either a recent overt act by S.D.W. or a continuing pattern of behavior that tends to confirm the deterioration of her ability to function

---

[1] Two experts opined about S.D.W.'s mental health in this case: one diagnosed her with schizophrenia and the other diagnosed her with "either" schizophrenia or bipolar disorder with manic symptoms.

independently.  *See id.* § 574.035(e)(2).  We therefore reverse the order of the trial court and direct S.D.W.'s release from civil commitment.

**BACKGROUND**

S.D.W. was indicted for harassment of a public servant, a third-degree felony. *See* Tex. Penal Code § 22.11(a)(3).  S.D.W.'s attorney filed a motion suggesting incompetency, and the trial court found her incompetent to stand trial.  *See* Tex. Code Crim. Proc. art. 46B.054. The trial court's order finding S.D.W. incompetent to stand trial committed her to "the appropriate facility"—Georgetown Behavioral Health Institute—"for further examination and treatment toward the specific objective of attaining competency to stand trial."  After several months at the facility and two doctors' opinions that S.D.W. was still incompetent to stand trial and was unlikely to regain competency, S.D.W. was returned to the Bell County Jail, where she remained at the time of the hearing at issue.

The State filed an application for the civil commitment of S.D.W. and a motion to appoint physicians to prepare "Certificates of Medical Examination for Mental Illness" (CMEs). *See* Tex. Health & Safety Code § 574.011 (outlining requirements of CMEs).  In the motion, the State recited that it "has chosen not to dismiss the criminal charges against [S.D.W.] and to proceed with civil commitment proceedings under Texas Code of Criminal Procedure art. 46B.071(b)(1)."  *See* Tex. Code Crim. Proc. arts. 46B.071(b)(1), 46B.102; *see also* Tex. Health & Safety Code § 574.035.

With the felony charge still pending, the trial court conducted a civil-commitment bench trial on July 7–8, 2025.  Pursuant to a bench warrant, S.D.W. appeared in person at the start of the trial but became "disruptive" by repeatedly interrupting the court before evidence was

2

presented. The court warned S.D.W. that she would be removed from the courtroom if her disruptions continued; when her behavior persisted, the court had her removed from the courtroom to appear for the remainder of the trial from jail via video. The evidence consisted of the CMEs of two medical doctors—Robert E. Cantu, MD and John Pierson, DO—and the live testimony of Dr. Cantu.

After trial, the court determined that S.D.W. is a person with mental illness who meets the criteria for court-ordered inpatient mental-health services and ordered S.D.W.'s involuntary commitment for twelve months to provide those services. *See* Tex. Code Crim. Proc. art. 46B.102; Tex. Health & Safety Code § 574.035. Specifically, the trial court found that S.D.W. is (a) suffering severe and abnormal mental, emotional, or physical distress; (b) experiencing substantial mental or physical deterioration of her ability to function independently, which is exhibited by her inability, except for reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety; and (c) unable to make a rational and informed decision as to whether or not to submit to treatment. *See* Tex. Health & Safety Code § 574.035(a)(2)(c). S.D.W. perfected an appeal from that order, challenging the legal and factual sufficiency of the evidence to support it.

**DISCUSSION**

The applicable statute specifies four criteria that the factfinder must find from clear and convincing evidence before the court may order a proposed patient to receive court-ordered extended inpatient mental-health services:

(1) the proposed patient is a person with mental illness;

(2) as a result of that mental illness the proposed patient:

3

(A) is likely to cause serious harm to the proposed patient;

(B) is likely to cause serious harm to others; or

(C) is

> (i) suffering severe and abnormal mental, emotional, or physical distress;
>
> (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
>
> (iii) unable to make a rational and informed decision as to whether or not to submit to treatment;

(3) the proposed patient's condition is expected to continue for more than 90 days; and

(4) the proposed patient has received court-ordered inpatient mental health services under this subtitle or under Chapter 46B, Code of Criminal Procedure, for at least 60 consecutive days during the preceding 12 months.

*See id.* § 574.035(a). The factfinder must specify which criterion listed in Subsection (a)(2)—that is, A, B, or C—forms the basis for its decision. *See id.* § 574.035(c). Here, the trial court specified in its order that the three-part criterion in Subsection (a)(2)(C) formed the basis of its decision. *See id.* § 574.035(a)(2)(C).

In proving the above four criteria, the statute specifies what the State's evidence must include:

> (e) To be clear and convincing under Subsection (a), *the evidence must include* expert testimony and *evidence of a recent overt act or a continuing pattern of behavior that tends to confirm*:
>
> (1) the likelihood of serious harm to the proposed patient or others; or
>
> (2) *the proposed patient's distress and the deterioration of the proposed patient's ability to function.*

4

*See id.* § 574.035(e) (emphases added).

S.D.W. does not take issue with the State's meeting its evidentiary burden on the first, third, and fourth criteria. However, S.D.W. asserts on appeal that the State did not meet its evidentiary burden on the second criterion. The State concedes, and the record reflects, that it did not produce evidence that S.D.W.'s mental illness presented any likelihood of serious harm to S.D.W. or to others. We therefore consider whether the State met its burden to prove the three sub-elements of the second criterion through clear and specific evidence of a recent overt act or a continuing pattern of behavior. That is, we consider whether the State proved that S.D.W. is (1) suffering severe and abnormal mental, emotional, or physical distress; (2) experiencing substantial deterioration of her ability to function independently, exhibited by her inability to provide for her basic needs; and (3) unable to make a rational and informed decision as to whether to submit to treatment. *See id.* § 574.035(a)(2)(C).

### Standard of review

The heightened burden of proof—clear and convincing evidence—requires that we utilize a heightened standard of review. *See State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (holding that "clear and convincing evidence" requirement in civil-commitment statute requires same heightened legal-sufficiency standard that applies in termination-of-parental-rights cases); *see also In re J.F.C.*, 96 S.W.3d 256, 264–65 (Tex. 2002) (outlining heightened standard in termination-of-parental-rights cases). Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *K.E.W.*, 315 S.W.3d at 20 (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam)). "Evidence that merely exceeds a

5

scintilla is not legally sufficient when the burden of proof is clear and convincing." *Id.* (citing *J.F.C.*, 96 S.W.3d at 264–65). This heightened standard is constitutionally required because civil commitment constitutes a significant deprivation of liberty that requires due-process protection. *See Addington v. Texas*, 441 U.S. 418, 425, 432–33 (1979).

Additionally, the legislature has mandated that satisfying the clear-and-convincing standard requires expert testimony, Tex. Health & Safety Code § 574.034(d), which includes the expert's opinion regarding the necessity of committing the patient, as well as the factual support for the opinion. *K.E.W.*, 315 S.W.3d at 20; *State ex rel. D.W.*, 359 S.W.3d 383, 386 (Tex. App.—Dallas 2012, no pet.). Furthermore, as noted above, the statute specifies the type of evidence the State is required to produce to satisfy the clear-and-convincing burden: evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the proposed patient's severe and abnormal mental, emotional, or physical distress *and* the deterioration of the proposed patient's ability to function independently. *See* Tex. Health & Safety Code § 574.035(d); *K.E.W.*, 315 S.W.3d at 20; *see also State ex rel. E.D.*, 347 S.W.3d 388, 392–93 (Tex. App.—Dallas 2011, no pet.) (noting that evidence of recent physical or verbal overt act that is probative of jury's findings, when perceived objectively, will satisfy State's burden). A proposed patient's verbal statements as well as physical actions are "overt acts," *K.E.W.*, 315 S.W.3d at 24, and verbal statements may support a finding of mental illness and predict future actions resulting from such mental illness, *id.* at 22.

When evaluating evidence for legal sufficiency under a clear-and-convincing standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re J.F.C.*, 96 S.W.3d at 266. We resolve disputed fact questions in favor of the

finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *J.F.C.*, 96 S.W.3d at 266.

A factual-sufficiency review requires that we weigh disputed evidence contrary to the challenged finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *Id.*

### The evidence[2]

Dr. Cantu testified that he met once with S.D.W. for thirty to forty-five minutes on June 13, 2025, to "perform a psychiatric evaluation in the context of completing" a CME. Dr. Cantu diagnosed S.D.W. with "either schizophrenia or bipolar disorder with manic symptoms." In his CME, Dr. Cantu concluded that S.D.W. "was experiencing substantial mental or physical deterioration as a consequence of [her mental] illnesses" and is not "capable of making rational, informed decisions on her own regarding her treatment." To support his conclusions, Dr. Cantu cited the following statements that S.D.W. made during the evaluation: "MHMR is trying to cure me," "I have trichomonas and AIDS," "they injected me with something," and "my skin is a high yellow." Dr. Cantu testified that S.D.W. was "unable to give me the year, the month, the day or the current president"; "was extremely disorganized and

---

[2] At the bench trial, the trial court announced it was taking judicial notice of its file in this proceeding. While a court may take judicial notice that a pleading or other documents have been filed in the case, it may not take judicial notice of the truth of the factual statements and allegations contained in the pleadings, affidavits, or other documents in the file. *See Abila v. Miller*, 683 S.W.3d 842, 849 (Tex. App.—Austin 2023, no pet.). We therefore outline and consider only the evidence admitted at trial.

delusional in her thinking"; "was not able to describe or report to me her past psychiatric or medical history"; and "was irrational and non-goal-directed in her responses to my simple questions regarding her current situation and her psychiatric and medical history." Dr. Cantu opined in his CME that S.D.W.'s condition is likely to continue for more than ninety days and that she will benefit from inpatient treatment.

On cross-examination, Dr. Cantu admitted that he had not reviewed any of S.D.W.'s patient files from her most recent inpatient stay and that he did not perform "any diagnostics" because he is "not a psychologist." His diagnosis was not based on testing but on his evaluation of S.D.W. and was a "presumptive" or "working diagnosis"—"subject to additional information"—rather than a "formal diagnosis." He explained that for a formal diagnosis "the symptoms hit each of the requirements of the DSM," whereas a presumptive diagnosis is based on "what you have in front of you, what you can see by observation and by the responses to your diagnostic questions." The only background information Dr. Cantu received about why he was asked to evaluate S.D.W. was to determine "whether or not she should continue involuntary treatment with the hopes of her—restoring her to competency." Dr. Cantu corrected himself when S.D.W.'s attorney reminded him that the State had previously informed him that S.D.W. cannot be restored to competency. Dr. Cantu conceded that he was not aware of the diagnoses S.D.W. had previously received or for which she was being treated at Georgetown Behavioral while attempts were made to restore her to competency. Dr. Cantu explained that S.D.W.'s records from her treatment at Georgetown Behavioral do "not necessarily have significant bearing [on his evaluation of her] if I'm examining the defendant and she is psychotic."

8

Dr. Cantu testified that jail—where S.D.W. had been residing for months preceding trial—is not typically a "therapeutic environment." He did not know whether S.D.W., after her release from Georgetown Behavioral to jail, had been offered the same medications that she had been receiving at the institution and did not know what those medications were. He agreed that it is possible S.D.W. had not been receiving any treatment in jail, although it was his "understanding" from jail staff that S.D.W. had "been refusing" medications while in jail. He had not reviewed any of her medical records from jail or from Georgetown Behavioral and did not know what, if any, medications she had been offered in jail or had been prescribed to her.

In addition to the testimony and CME of Dr. Cantu, the trial court admitted Dr. Pierson's CME. The State did not call Dr. Pierson to testify. In his CME, Dr. Pierson stated that he examined S.D.W. in jail on June 14, 2025, and explained the "detailed basis" for his opinion that S.D.W. meets the civil-commitment requirements:

> Patient is currently psychotic. She is delusional in multiple facets. She suffers from grandiose delusions—she believes she is a physician, psychologist, dentist, judge, military police, etc. She suffers from somatic delusions—she believes that her body is broken, she has bugs crawling in and out of her body, that she has multiple infections [sic] diseases (Ebola, AIDS, and COVID 19). She currently is living in a false sense of reality. She is not oriented to date or time. She believes she has committed no crime warranting to be placed in jail. When provider made her aware of upcoming court she believed it was for a settlement she is owed. Provider attempted to discuss her current charges and to this date she has no concept of these charges or any wrongs she has committed. Patient is well known to provider. She spent more than 9 months in inpatient unit in 2022 due to severity of her mental illness. She is not currently tanking [sic] any medications, and dies [sic] not believe she has any mental illness requiring treatment. Patient is gravely disable[d], unable to make appropriate decisions.

In his CME, Dr. Pierson stated that S.D.W. "currently has orders for medications (Perphenazine and Vaproic [sic] Acid)" and that a "brief diagnosis" of her "physical and mental condition" is "Schizophrenia—Paranoid Type." Neither Dr. Pierson's CME nor other evidence explained

9

what conditions Perphenazine and Valproic Acid are prescribed for or which symptoms they are used to treat.

*Analysis*

Having reviewed all the evidence, we have identified the following as being arguably probative of the trial court's finding that S.D.W. committed a recent overt act or demonstrated a continuing pattern of behavior that tends to confirm that she is experiencing substantial mental or physical deterioration of her ability to function independently, *see* Tex. Health & Safety Code § 574.035(e):

- Dr. Pierson's statement in his CME that S.D.W. is not taking any medications and does "not believe she has any mental illness requiring treatment";

- Both doctors' statements that S.D.W. was not oriented to date or time during their evaluations and that she is delusional and psychotic, including the lists of alleged delusions she has;

- Dr. Pierson's statement that S.D.W. has a false sense of reality and Dr. Cantu's statement that she was irrational and non-goal oriented in responding to his questions about her "current situation";

- Dr. Cantu's statement that S.D.W. was unable to recite her past psychiatric or medical history;

- Dr. Cantu's "understanding" from jail staff that S.D.W. had been refusing unspecified medications;

- Dr. Pierson's statement that S.D.W. had spent more than nine months in inpatient treatment in 2022 due to the "severity of her mental illness";

- Dr. Pierson's statement that S.D.W. is "unable to make appropriate decisions"; and

- S.D.W.'s in-court behavior that prompted the trial court to remove her from the courtroom.

We have found nothing else in the record that arguably supports the challenged finding, and we cannot conclude that the above constitutes legally sufficient, clear and specific evidence of an overt act or a continuing pattern of behavior tending to confirm that S.D.W. is experiencing substantial mental or physical deterioration of her ability to function independently.

While Dr. Cantu testified that S.D.W. does not believe she has any mental illness requiring treatment, the factual basis underlying such a statement is absent—that is, Dr. Cantu does not explain how he came to know that S.D.W. holds such a belief. Also lacking is any explanation of why her mental illness requires treatment and what such treatment might entail. *See In re F.M.*, 183 S.W.3d 489, 497 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("The significance of a refusal to accept, not only psychiatric medication, but any other kind of medication or medical procedure, cannot be assessed in the absence of expert opinion concerning recommended treatment, risks, alternatives, and consequences."). Moreover, even assuming that S.D.W. told Dr. Cantu she believes she does not have a mental illness requiring treatment—such statement constituting an "overt act," *see K.E.W.*, 315 S.W.3d at 24—the statement is not probative, without more, of her ability to function independently enough to meet her own basic food, clothing, health, and safety needs. That a person may deny having a mental illness does not, without more, demonstrate they cannot function independently with respect to providing for their own basic needs. And although Dr. Cantu testified that it is his "understanding" that S.D.W. had been "refusing medications" in jail, the facts supporting such refusals—which medications, on which occasions, and under what circumstances—are not in the record. These statements are not supported by the necessary factual bases to support them as required by the statute.

An expert diagnosis of mental illness, standing alone, is not sufficient to confine a patient for treatment. *State ex rel. E.R.*, 287 S.W.3d 297, 302 (Tex. App.—Texarkana 2009, no pet.). Likewise, evidence that merely reflects a patient's mental illness and need for hospitalization is insufficient to meet the State's burden. *Id.* "[T]he Health and Safety Code requires that mental illness be shown as a separate inquiry from the issue of a person's deterioration of ability to function." *Armstrong v. State*, 190 S.W.3d 246, 252 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "That a person is mentally ill or has been previously hospitalized for mental illness, therefore, is no evidence of the person's inability to function independently." *Id.* "Moreover, evidence of the effects of mental illness does not necessarily establish evidence of *substantial* mental or physical deterioration unless the effects impair a person's ability to function independently to provide for basic needs." *Id.* (holding that evidence of proposed patient's mental illness, oppositional behavior, poor hygiene, poor insight and judgment, lack of trust towards others, diminished weight and insomnia, physical-health problems, and prior hospitalization were legally insufficient absent testimony that she was unable to function independently to provide for her basic needs).

Additionally, the statements in Dr. Pierson's and Dr. Cantu's CMEs about S.D.W.'s delusional beliefs—assuming they truly are delusional—do not, without more, tend to confirm that she is experiencing substantial deterioration in her ability to function independently with respect to feeding and clothing herself and keeping herself safe and healthy. *See E.R.*, 287 S.W.3d at 306 ("Assuming that these scenarios are, in fact, hallucinations . . . we note that evidence of hallucinations or delusions alone is insufficient to justify involuntary commitment on the grounds of mental distress and the deterioration of the ability to function independently."). Furthermore, S.D.W.'s being disoriented as to date and time, being unable to recite her medical

12

and psychiatric history, exhibiting disruptive behavior at the start of trial, and believing she has not committed a crime—although perhaps demonstrative of her mental illness—also do not constitute clear and specific evidence of an overt act or continuing pattern of behavior tending to show that she cannot function independently with respect to providing for her basic needs.

An expert's opinions and recommendations must be supported by a showing of the factual bases on which they are grounded, and the State must show more than delusions or other facts that merely confirm a proposed patient's mental illness. *Id.* at 303. The State's evidence of an overt act or continuing pattern of behavior "must relate to the criterion on which the judgment is based," which here is the alleged substantial deterioration of S.D.W.'s ability to independently function. *Id.*; *In re F.M.*, 183 S.W.3d at 492; *J.M. v. State*, 178 S.W.3d 185, 193 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The requirements for involuntary commitment are strict because involuntary commitment is a drastic measure; accordingly, the evidentiary standards for involuntary commitment are high. *See State ex rel. H.S.*, 484 S.W.3d 546, 549 (Tex. App.—Texarkana 2016, no pet.). The doctors' CMEs and Dr. Cantu's testimony do not detail how S.D.W.'s delusions or mental illness—"grandiose" or severe though they may be— impair her ability to function independently. Moreover, the CMEs and testimony do not show the factual bases on which the ultimate conclusions are based, much less any clear and specific evidence of overt acts or behavioral patterns to show substantial deterioration of S.D.W.'s ability to function independently. Although the record reflects some confusion and disruptive behavior by S.D.W. at the trial, which the trial court could consider as "overt acts" in making its determination, *see State ex rel. H.S.*, 484 S.W.3d at 551 (noting that proposed patient's demeanor and behavior while testifying may support required findings), again we cannot conclude that such behavior demonstrates substantial deterioration of her ability to function independently.

And finally, even though Dr. Pierson noted in his CME that S.D.W. is "known" to him, he did not explain the extent of his familiarity with her or identify any pattern of behavior or overt act she has committed to support the required statutory finding.

Reviewing the evidence under the heightened standard of review required to protect S.D.W.'s due-process rights, *see Addington*, 441 U.S. at 425; *K.E.W.*, 315 S.W.3d at 20, we hold that there is legally insufficient evidence in the record of any overt act or continuing pattern of behavior by S.D.W. tending to confirm that she is experiencing substantial mental deterioration of her ability to function independently, exhibited by her inability to provide for her basic needs, including food, clothing, health, and safety, as required by statute. *See* Tex. Health & Safety Code § 574.035(e); *E.R.*, 287 S.W.3d at 305–06 (determining that analogous evidence was legally insufficient to show recent overt act or continuing pattern of behavior tending to confirm proposed patient's distress and deterioration of ability to function); *Armstrong*, 190 S.W.3d at 253–54 (same). That is, viewing the clear and specific evidence in the light most favorable to the trial court's finding about S.D.W.'s ability to function independently, we conclude that a reasonable factfinder could not have formed a firm belief or conviction that the finding was true. *See J.F.C.*, 96 S.W.3d at 266. We sustain S.D.W.'s legal-sufficiency issue and therefore need not address her factual-sufficiency issue. *See* Tex. R. App. P. 47.1.

**CONCLUSION**

Having sustained S.D.W.'s legal-sufficiency issue, we reverse the trial court's order and render judgment denying the State's application for extended inpatient mental-health services. *See* Tex. R. App. P. 43.2(c). Having rendered such judgment, we order S.D.W.'s

immediate release from the institution to which she has been committed. *See* Tex. Health & Safety Code § 574.033.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Crump and Ellis

Reversed and Rendered

Filed: February 5, 2026